396 A.2d 625

**COMMONWEALTH of Pennsylvania**

v.

**Martin T. MUSSELMAN, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 19, 1978.

Decided Jan. 24, 1979.

John Woodcock, Jr., Public Defender, Hollidaysburg, for appellant.

Thomas G. Peoples, Jr., Dist. Atty., Hollidaysburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On October 28, 1976, after a jury trial, appellant was found guilty of murder of the third degree in connection with the death of Robert Hammel. Appellant was also found guilty on a separate information of aggravated assault, terroristic threats and recklessly endangering another for conduct directed at Hammel in the course of the killing.[1] On still another information, appellant was convicted of aggravated assault, recklessly endangering another and terroristic threats for conduct directed at Francis Zeth. Post-verdict motions were denied and an appeal was taken directly to this Court from the judgment of sentence for murder

1. The crimes of aggravated assault, 18 Pa.C.S.A. § 2702(a)(1) & (4), and recklessly endangering another, 18 Pa.C.S.A. § 2705, arising from appellant's shooting of Robert Hammel are lesser included offenses of murder. The elements required to be proved on both charges are all necessary, though not sufficient, to establish the elements of murder. *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 104, 21 A.2d 920, 921 (1941); see *Commonwealth v. Garcia*, 474 Pa. 449, 460, 378 A.2d 1199, 1205 (1977) (quoting Model Penal Code § 1.07(4)(a)).

of the third degree.[2]   The appeal to the Superior Court of the judgments of sentence for all other offenses was consolidated in this appeal.[3]

Appellant raises numerous grounds for relief.  We find it necessary to consider only the contentions that the trial court erred in its instruction on voluntary manslaughter; that it erroneously refused to instruct the jury to acquit appellant on the charge of terroristic threats against Robert Hammel;  that the court's instruction on intoxication was inadequate;  and that the reading to the jury of informations containing a charge not supported by the evidence prejudiced appellant's case.  We agree that the convictions of murder and terroristic threats against Robert Hammel may not stand.  The convictions of the lesser offenses included in the crime of the murder of Robert Hammel must likewise fall.  However, appellant has offered no basis for disturbing the remaining convictions for offenses directed against Francis Zeth, and as to those we affirm.[4]

2.  For the crime of murder of the third degree, appellant was sentenced to serve not less than seven and one-half years and not more than twenty years in prison and to pay a fine of $500.  No sentence was imposed for the other offenses arising from the killing.  A $500 fine was imposed for the offenses directed at Zeth.

3.  We have jurisdiction to hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, §§ 202(1) & 503(c), 17 P.S. § 211.202(1) & 211.503(c) (Supp.1978).

4.  Appellant has raised numerous other claims which, because of our reversal of the conviction for murder of the third degree, we need not address.  Those claims are:  (1) that the court should not have instructed the jury on transferred intent with respect to murder;  (2) that the court should not have presented to the jury those charges which were lesser included offenses of murder or, alternatively, should have instructed the jury on merger;  (3) that the court erred in denying individual voir dire under Rule 1106(e), Pa.R.Crim.P., where first degree murder was charged;  (4) that even though the jury was ultimately told that the Commonwealth did not seek the death penalty the court erred in telling the jury that the death penalty was a possible punishment;  (5) that the court erred in its charge on involuntary manslaughter;  and (6) that the court erred in its instructions on third degree murder.

Appellant's final claim was that the verdict was "contrary to the evidence for the reasons set forth in this brief."  We find, however, that nothing in appellant's brief addresses the sufficiency of the

I

The testimony at trial reveals that on April 3, 1976, appellant was at home drinking beer, waiting for an unemployment check to arrive in the mail. When the check was not delivered, he placed a .22 caliber rifle in his car and drove to his parents' home. Offering the weapon as security, he sought to borrow money. His parents did not have the money, however, and appellant drove to a nearby bar where, without incident he remained from about 2:00 p. m. to 10:00 p. m.

At about 10:00 p. m., appellant was seated near two other patrons, Paul Glass and Francis Zeth. The testimony indicates that when Zeth left his table, appellant took Zeth's glass of beer, placed it on his own table and left momentarily. When Zeth returned, his companion Paul Glass told him what had happened. In appellant's absence, Zeth then retrieved the beer. The testimony reveals that appellant discovered this and instigated an argument which escalated into a fist fight with Zeth. Appellant was ordered to leave the bar, and on departing was heard to say to Zeth, "You're dead." Minutes later appellant reappeared in the doorway of the bar bearing the .22 caliber rifle. Robert Hammel, a friend of appellant who was not involved in the earlier fight, approached him. Appellant fired, fatally wounding Hammel in the abdomen. Soon thereafter appellant fled the bar, and was later arrested at another bar near his home. At trial appellant testified that on the day in question he had consumed more than a case (twenty-four pints) of beer and that he had no recollection of shooting Robert Hammel, arguing with Zeth or Glass, or making any threatening remarks.

Appellant was charged with criminal homicide, two counts of aggravated assault, terroristic threats and recklessly endangering another. The trial court instructed the jury on the various offenses and included an instruction on voluntary manslaughter. Defense counsel objected to inaccura-

evidence except in relation to the conviction for terroristic threats against Robert Hammel.

cies in the charge on voluntary manslaughter but the court made no correction. The jury returned its verdicts, the court imposed sentence, and this appeal followed.

## II

In *Commonwealth v. Lesher*, 473 Pa. 141, 148, 373 A.2d 1088, 1091 (1977), this Court stated:

"It is well-established . . . that in charging the jury the trial court is free to use its own form of expression; the only issue is whether the area is adequately, accurately and clearly presented to the jury. *Commonwealth v. McComb*, 462 Pa. 504, 341 A.2d 496 (1975). Also, in evaluating a challenge to the correctness of instructions to the jury, the charge must be read and considered in its entirety and it is the general effect of the charge that controls. *Commonwealth v. Rodgers*, 459 Pa. 129, 327 A.2d 118 (1974); *Commonwealth v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974)."

Here the trial court initially charged the jury on voluntary manslaughter as follows:

"Now, with respect to voluntary manslaughter. Included in the offense of murder charged in this case is the lesser offense of voluntary manslaughter. A person who kills an individual without lawful justification, commits a voluntary manslaughter if, at the time of the killing, he is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the actor endeavored to kill but he negligently or accidently [sic] causes the death of the individual killed. You, the jury, must therefore consider in this case whether the defendant acted in sudden and intense passion, resulting from serious provocation. Passion includes anger, terror, rage or resentment. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person. If a reasonable cooling time elapses between the alleged provocation and the killing, the provocation will not reduce murder to voluntary manslaughter. *Consequently, you cannot find the defendant guilty of murder*

*unless after considering all of the evidence you are satisfied, beyond a reasonable doubt, that at the time of the alleged killing the defendant was not acting under a sudden and intense passion resulting from serious provocation by Mr. Hammel.* However, if you do not find the defendant guilty of murder under the instructions I have just given you, you may nevertheless find him guilty of voluntary manslaughter if you are satisfied, beyond a reasonable doubt, that without lawful justification he caused the death of Mr. Hammel with intent to kill or inflict great bodily harm, negligently or accidentally, while endeavoring to kill another." (Emphasis added.)

Appellant argues that the italicized statement erroneously informed the jury that it could return a verdict of voluntary manslaughter only if it found the appellant was seriously provoked by the victim, Robert Hammel. We agree that the court's statement was incorrect.[5] The very next statement of the trial court also supports appellant's view. The court instructed the jury that if it did not find murder under the instructions "just given" it could still find voluntary manslaughter if

"satisfied beyond a reasonable doubt, that without lawful justification [the appellant] caused the death of Mr. Hammel with intent to kill or inflict great bodily harm, negligently or accidentally while endeavoring to kill another."

This follow-up instruction does nothing to cure the confusion about the permissible source of provocation for purposes of reduction from murder to voluntary manslaughter, but instead tends to reaffirm the preceding instruction that a reduction is allowed only if the victim himself seriously provoked the appellant.

5. In defining voluntary manslaughter, 18 Pa.C.S.A. § 2503 provides in part:

"(a) General rule.—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) the individual killed; or

(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed."

Near the end of its general charge, the trial court undertook to summarize its explanation of voluntary manslaughter:

> "Voluntary manslaughter exists where the act of the defendant caused the death of the deceased and there was either serious provocation, in other words the act of the deceased provoked the defendant, or if there was an unreasonable belief of provocation. Under any of those circumstances, a finding of guilty of voluntary manslaughter would be applied. In other words, if he caused the death and there was serious provocation by Mr. Hammel, then he could not be convicted of voluntary manslaughter. If he caused the death but there was a reasonable belief that he was only using the defense necessary, he couldn't be convicted. But, if he caused the death, there was no serious provocation, or there was an unreasonable belief of provocation or of the defense thereto, it would constitute voluntary manslaughter."

The trial court's sole, and apparently exclusive, illustration of voluntary manslaughter again concerns provocation by the victim. There is no mention here that the provocation may be caused by someone else. This recapitulation compounds the earlier confusion. The trial court's summary is also misleading in that after expressing its definition of voluntary manslaughter, the court immediately contradicts it. In the excerpt, the court mistakenly instructs that even if a serious provocation by the victim were found, appellant could *not* be convicted of voluntary manslaughter.

Appellant was entitled to and was given a charge on voluntary manslaughter,[6] but the charge he received erroneously informed the jury that one who acts under a sudden and intense passion commits murder where, in attempting to kill someone who seriously provoked him, he mistakenly kills another. The charge was thus misleading and incomplete, and viewed in its entirety failed to present to the jury an

---

**6.** *Commonwealth v. Manning,* 477 Pa. 495, 384 A.2d 1197 (1978); *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142, cert. denied, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974).

adequate, accurate and clear explanation of the law. *Commonwealth v. Lesher*, supra; *Commonwealth v. McComb*, 462 Pa. 504, 341 A.2d 496 (1975). Appellant properly took exception to the court's misstatement and the court wrongly refused to remedy its instruction. In *Commonwealth v. Manning*, 477 Pa. 495, 499, 384 A.2d 1197, 1199 (1978), this Court held that a defendant charged with murder "has an unconditional right on request to an instruction on the complete statutory definition of the offense of voluntary manslaughter." Accordingly appellant is entitled to a new trial on the charge of murder and the lesser offenses included in that charge.

### III

Appellant also claims that there was insufficient evidence to support a charge of terroristic threats against Robert Hammel.[7] The offense of terroristic threats, 18 Pa.C.S.A. § 2706, is defined as follows:

"A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience."

There is evidence supporting the conclusion that appellant threatened Francis Zeth in the aftermath of their fight by saying to him "You're dead." But there is no evidence at all connecting this or any threatening remark to Robert Ham-

---

7. Appellant's request for charge, and his objection to the court's charge, were sufficient to preserve this issue. We note, however, that the request for charge stated that the evidence was insufficient to support a verdict of guilty of "terroristic threats to the victim Zeth." Although counsel erred in referring to Zeth instead of Hammel, we believe the express reference to "victim" adequately presented the issue to the trial court. Counsel's post-verdict presentation of this issue to the trial court also contained a misstatement. Counsel referred to the wrong Criminal Action number. Yet counsel did at that point make clear that he was alleging a lack of evidence for the crime of terroristic threats against Robert Hammel. Again we believe the substantive issue was adequately presented.

mel. Despite the factual insufficiency, the trial court after reading the Informations against appellant instructed the jury that the "defendant is charged in [Criminal Action] 338 of 1976 with having issued terroristic threats insofar as Mr. Hammel is concerned . . .."

■ Because there is no evidence of terroristic threats against Robert Hammel, that conviction may not stand.

## IV

Based on the foregoing conclusions, appellant's remaining arguments need be considered only as they pertain to the offenses involving Francis Zeth.

■ Appellant urges that the trial court erred in refusing to instruct the jury to acquit appellant if it found that he was unable to act voluntarily or distinguish right from wrong because of intoxication. The trial court's instruction, viewed in their entirety. *Lesher,* supra, comply with *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975).[8] These instructions adequately informed the jury that if it found that the Commonwealth failed to meet its burden of proof that intoxication did not "vitiate," "set aside" or "make impossible" the state of mind which was an element of the crime charged, then appellant should be acquitted.[9]

8. The Commonwealth has not contested the applicability of *Commonwealth v. Graves,* supra, to the present case. We have no occasion to consider the 1976 amendment to 18 Pa.C.S.A. § 308, prescribing the effect of proof of intoxication.

9. The full passage is as follows:
   "In this connection, if the intoxication in your mind vitiated, set aside, made it impossible, the criminal element of intent necessary, then of course you would find the defendant not guilty, and the burden of proving lack of intoxication, once the issue is raised, rests with the Commonwealth, and in this particular respect the Commonwealth contends that it has negatived the effect of any intoxication by virtue of the actions and the conduct of the defendant and the statements of the witnesses. The Commonwealth argues that he was not of a sufficient intoxicated state to destroy the mental element of intent necessary, as evidenced by his statements, by his going to the car, by his getting the gun, by his return, by his leaving, by the fact that he drove his car to his Mother's home, that he drove his car from his Mother's home into Altoona,

Appellant additionally contends that the court's reading to the jury of informations containing unsupported charges against him prejudiced his trial. In particular, he claims that there was insufficient proof of terroristic threats against either Hammel or Zeth. He is correct only as to the charge of terroristic threats against Hammel, discussed supra.

In the present case the trial court made clear to the jury that it was to rest its decision on the evidence presented in court. The reading of informations was not inherently prejudicial but was designed to describe the matters which the jury was asked to decide. Appellant has failed to cite a single authority for the view that the reading of an information containing a charge found unsupported on appeal invalidates convictions on other charges before the jury. Nor has he argued that joinder was improper. In this case, where the charge of terroristic threats against Robert Hammel does not involve a factual element necessary for a verdict of guilty of the offenses of aggravated assault, recklessly endangering another, and terroristic threats directed at another person, we decline to disturb those convictions. Cf. *United States v. Gaddis*, 424 U.S. 544, 549, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976) (upholding conviction for bank robbery

Pennsylvania, parked it in a parking space in a parking lot near his home, that he made certain statements to the Officers, that he made certain statements to his wife and to others with respect to what had transpired. The Commonwealth contends that that evidences the fact that he was of a capable mind to form an intention and so on. The defendant contends that he does not remember much of that which transpired. The Commonwealth contents that there is a difference between recollection of what transpired and intent what to do at the time and place of the event. These are matters all for you to decide, as the jurors, what are the true facts in this case, and as heretofore indicated, the law permits you to infer from the use of a deadly weapon a certain intention on the part of the defendant. This is a matter for you to take into consideration and if you conclude as a matter of fact, based upon the testimony offered and the law as the Court gives it to you, that the defendant was not capable by virtue of intoxication of forming a requisite intent then of course he could not be guilty because he must have intentionally, knowingly, recklessly, or negligently, as I have described those terms to you, committed the act in question."

and vacating conviction for possession of stolen funds due to insufficient evidence).

The judgment of sentence for murder of the third degree and for the lesser included offenses of aggravated assault and recklessly endangering another arising from the shooting of Robert Hammel are reversed, and the matter is remanded for a new trial. The judgment of sentence for terroristic threats against Robert Hammel is reversed for insufficient evidence. The judgment of sentence for the offenses of aggravated assault, terroristic threats and recklessly endangering another directed against Francis Zeth is affirmed.

POMEROY, former J., did not participate in the decision of this case.

O'BRIEN, J., did not participate in the consideration or decision of this case.

NIX and LARSEN, JJ., dissent believing that on this record the evidence establishes as a matter of law that the killing was not voluntary manslaughter, and therefore the "incorrect charge" was at best harmless error.