404 A.2d 1305

**COMMONWEALTH of Pennsylvania,**

v.

**Arthur PITTS, Appellant.**

Supreme Court of Pennsylvania.

Argued April 24, 1979.

Decided Aug. 27, 1979.

David Zwanetz, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., James Garrett, Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Arthur Pitts, was tried by a judge sitting with a jury for the homicide of Edward Carter on December 23, 1975. The jury found appellant guilty of murder of the third degree and possessing instruments of crime. Post-verdict motions were denied and appellant was sentenced to ten to twenty years in prison for the conviction of murder of the third degree and two and one-half to five years on the instruments of crime conviction, both sentences to be concurrent. This appeal followed.[1]

Appellant first argues the evidence is insufficient as a matter of law to sustain his conviction for murder of the third degree. This argument centers on appellant's belief the jury should have accepted defense testimony of voluntary intoxication, rather than the Commonwealth's evidence.

The facts surrounding this issue are as follows. On December 23, 1975, appellant and decedent, Edward Carter, were drinking alcoholic beverages during the day. The testimony indicates a quantity of wine and large quantities of whiskey were consumed by appellant, decedent and a mutual friend, "Mr. Lumpkin." At approximately 6:00 p. m., Roberta Johnson, decedent's paramour, helped decedent upstairs to the bedroom. Johnson's assistance was necessary as Carter was intoxicated. Both Carter and Johnson lie on the bed, Johnson watching television and Carter sleeping. Appellant entered the room, attempted to wake up Carter,

---

1. Appellant properly appealed the murder conviction to this court and the possession of instruments of crime conviction to the Superior Court, which certified the appeal to this court for disposition.

and complained that Carter was involved with "his woman." During this argument, Johnson left the bedroom, but asked Lumpkin to go up to the bedroom to watch decedent and appellant. Upon her return to the bedroom, Johnson was asked by Lumpkin to call the police. She entered the room and saw Carter on the couch. He had sustained stab wounds of the stomach and leg, which caused his death.[2] As Johnson went to the house next door to call police, she noticed appellant leaving the house where the stabbing had occurred. She saw him drop a kitchen knife and then retrieve it. Subsequently, when the police arrived at the scene of the Carter slaying appellant returned to the house and attempted to conceal the knife in a flower pot. The knife was found by the police and it was later determined the knife had human blood on it. Appellant was then arrested. The arresting and interrogating officers both testified that although appellant's breath did smell of alcohol, his reflexes and ability to understand and discuss events surrounding the stabbing appeared unimpaired.

In *Commonwealth v. Firth*, 479 Pa. 333, 388 A.2d 683 (1978), this court reiterated the standard of appellate review in judging the sufficiency of the evidence:

"In *Commonwealth v. Rose*, 463 Pa. 264, 267–68, 344 A.2d 824, 825–826 (1975), we stated:

" 'The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. . . . Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. . . . The fact-finder is free to believe all, part, or none of the evidence. . . .' "

2. The medical examiner testified that Carter had received nine stab wounds.

A review of the Commonwealth's evidence reveals that evidence to be sufficient, if it is believed. The factfinder can believe all, part or none of the testimony.

Appellant next argues that the court below erred in failing to instruct the jury on the relationship of voluntary intoxication to the intent element of voluntary manslaughter.

The trial court charged:

"In the event you should be persuaded to entertain the question of finding the defendant guilty of only voluntary manslaughter, whether he might have been intoxicated would then be no part whatever of your reasoning, and you must as to that determination dismiss all evidence of his intoxication from your consideration." (N.T. 434).

The relevant statute, in effect at the time of this crime, stated:

"Intoxication or drugged condition are not, as such, defenses to a criminal charge; but in any prosecution for any offense, evidence of intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to negative an element of the offense." Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973. 18 Pa.C.S.A. § 308.[3]

Section 308 makes clear that evidence of intoxication is relevant and admissible to negate an element of a crime.

This court, in *Commonwealth v. Graves*, 461 Pa. 118, 122–23, 334 A.2d 661 (1975), stated:[4]

"The only permissible probative value evidence of intoxication may have in criminal proceedings is where it is

3. Section 308 was subsequently amended to read:
  "Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder." As amended April 7, 1976, P.L. 72, No. 32, § 1, imd. effective.

4. In *Graves*, § 308 was not applicable.

relevant to the question of the capacity of the actor to have possessed the requisite intent of the crime charged. Where the legislature, in its definition of a crime, has designated a particular state of mind as a material element of the crime, evidence of intoxication becomes relevant if the degree of inebriation has reached that point where the mind was incapable of attaining the state of mind required. It must be emphasized that although evidence of intoxication never provides a basis for exoneration or excuse, it may in some instances be relevant to establish that the crime charged in fact did not occur.[3]

"[3] 'Suppose on the other hand D has been arrested for larceny, having been found walking off with X's glass which he had no privilege or authority to carry away. Suppose again the only explanation he has to offer is that he was voluntarily drunk at the time and did not know what he was doing, the evidence indicating that he staggered away from the bar where he had been over-indulging and walked out into the street still clutching the glass from which he had been drinking, but too befuddled by liquor to know he was holding anything in his hand,—and when the glass was taken from him by the apprehending officer D stared at it blankly with no idea where it came from. The actus reus of larceny is the trespassory taking and carrying away of the personal property of another. D has done this and his voluntary intoxication is no excuse, but the facts stated fail to establish larceny.' (Footnotes omitted). Perkins, Criminal Law, ch. 8, § 3 at 788 (1957).

"Rejecting the view that an evidentiary rule relating to the introduction of evidence of intoxication must be strictly construed to avoid condoning voluntarily induced intoxication, most text writers have recognized the issue as being whether the crime in fact has been committed and considered the question accordingly:

" 'Where a particular purpose, motive or intent is a necessary element to constitute the particular kind or degree of crime, it is proper to consider the mental condition of accused, although produced by voluntary intoxication, and, where he lacked the mental capacity to entertain the requisite purpose, motive, or intent, such incapacity may constitute a valid defense to the particular crime charged, and the same rule applies to voluntary intoxication resulting in mental incapacity to indulge premeditation or deliberation, which precludes conviction of an offense wherein premeditation is essential . . . .

" 'The majority rule, holding intoxication to an extent precluding capacity to entertain a specific intent or to premeditate to be a defense, does so not because drunkenness excuses crime, but because, if the mental status required by law to constitute crime be one of specific intent or of deliberation and premeditation, and drunkenness excludes the existence of such mental state, then the particular crime charged has not in fact been committed.

" 'Where a specific intent is an ingredient of the crime charged, the fact that that accused's drunkenness is voluntary does not render the defense of intoxication incompetent, since the intent to become intoxicated does not tend to prove an intent to commit the offense.' (Footnotes omitted.) 22 C.J.S. Criminal Law § 68, pp. 217–219."

In *Commonwealth v. Mason*, 474 Pa. 308, 378 A.2d 807 (1977), this court stated:

"The trial court's refusal to charge the jury concerning the element of intent necessary to convict of voluntary manslaughter was error. The term 'voluntary manslaughter' contemplates an *intentional* or *voluntary* (emphasis in original) act on the part of the defendant. In *Commonwealth v. Moore*, 398 Pa. 198, 202 n. 2, 157 A.2d 65, 68 n. 2 (1959), *the Court stated 'that where there is a nonmalicious felonious killing with a specific intent either to kill or to seriously injure, it is voluntary manslaughter.'* (Emphasis added.) In *Commonwealth v. Campbell*, 451 Pa. 465, 468, 304 A.2d 121, 122 (1973), the court again speaking of voluntary manslaughter stated 'that it is an intentional killing (emphasis added in *Mason*) which is perpetrated while under the influence of overriding passion, . . . ' In *Commonwealth v. Butcher*, 451 Pa. 359, 364, 304 A.2d 150, 153 (1973), this Court indicated that a necessary element of both murder in the first degree and voluntary manslaughter is the *specific intent to kill*." (Emphasis in original.)

In light of *Commonwealth v. Mason*, and the then applicable § 308 of the Crimes Code, the trial court erred in failing to charge the jury on the relationship of voluntary

intoxication and the specific intent requirement of voluntary manslaughter. However, the Commonwealth argues the error was harmless beyond a reasonable doubt. We agree.

The jury in the instant case found appellant guilty of murder of the third degree. Murder of the third degree is a killing done with legal malice but without specific intent to kill. Murder of the third degree can, however, in some cases involve the specific intent to harm a victim as long as said intent falls short of the specific intent to kill. Voluntary manslaughter, on the other hand, involves the specific intent to kill but, by reason of passion and provocation, contains no legal malice.

In the instant case, appellant was found guilty of murder of the third degree. The jury thus found appellant had no specific intent to kill the victim. By such a finding, the jury found voluntary manslaughter was not applicable to this case. The error in the instant case could not harm appellant, unless he was convicted of voluntary manslaughter, for only then would the issue of intoxication become relevant. We thus agree with the Commonwealth that the error was harmless beyond a reasonable doubt.

Appellant's third argument is that the district attorney misstated the law, thereby depriving him of a fair trial. The district attorney, in his closing, stated:

". . . drinking, perhaps, all day, but, ladies and gentlemen, the Commonwealth also submits—and of course the Judge will give you the law; this is just the Commonwealth's submission to you—that intoxication is not a defense to third degree murder or to voluntary manslaughter; that voluntary intoxication is no defense to the events or to the incident with which the defendant is charged in this case.

"If you believe, for example, that the defendant after drinking all day—if you believe that he drank what he says he drank—

"MR. ZWANETZ: Your Honor, objection. The objection is to the statement of law, as not coming from the Court.

"THE COURT: He is free to comment on the law. The jury will take the law as the Court instructs them, but counsel are free to discuss the law. As to the facts, the jury determines what the facts are.

"I will overrule your objection."

Counsel did not contest the correctness of the statement at trial. Counsel only objected to the statement of *law* by the district attorney. On appeal, appellant now attempts to argue that the statements were erroneous.

" . . . It has long been the rule in this jurisdiction that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post trial. *Commonwealth v. McNeal*, 456 Pa. 394, 398, 319 A.2d 669 (1974); *Commonwealth v. Budd*, 443 Pa. 193, 195, 278 A.2d 879 (1971); *Commonwealth v. Raymond*, 412 Pa. 194, 202–203, 194 A.2d 150 (1963)." *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975).

Judgments of sentence affirmed.

EAGEN, C. J., and NIX, J., concur in the result.

ROBERTS, J., files a dissenting opinion in which MANDERINO, J., joins.

ROBERTS, Justice, dissenting.

The trial court's instruction on voluntary manslaughter erroneously precluded the jury from even considering evidence of appellant's intoxication. The majority holds that this instruction misstated the law but nevertheless denies relief on the spurious theory that because appellant was convicted of murder of the third degree the trial court's error was harmless beyond a reasonable doubt. I dissent.

The trial court instructed the jury that as to the charge of involuntary manslaughter evidence of appellant's intoxication "would be no party [sic] whatever of your reasoning, and you must as to that determination dismiss all evidence of his intoxication from your consideration." This erroneous instruction incorrectly and improperly circumscribed the

jury's consideration. That the jury returned a verdict of murder of the third degree in no way lessens the possibility that the court's error diverted the jury from a verdict of voluntary manslaughter. But for the trial court's error, the jury might have found that the intoxication evidence justified a compromise verdict of voluntary manslaughter even if the jury believed that evidence insufficient to justify acquittal.

Appellant clearly was entitled to a charge on voluntary manslaughter which correctly and completely expressed the law. E. g., *Commonwealth v. Musselman*, 483 Pa. 245, 396 A.2d 625 (1979). Having found the trial court's instructions on voluntary manslaughter to be defective, this Court may not overlook a recognized possibility of harm which could arise from that error. The trial court's acknowledged error in this case was far from harmless beyond a reasonable doubt. I would reverse and remand for a new trial.

MANDERINO, J., joins in this dissenting opinion.