977 A.2d 1103

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Crystal Dawn WEIMER, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 6, 2008.

Decided Aug. 17, 2009.

Mary C. Campbell–Spegar, Esq., Fayette County Public Defender's Office, Connellsville, for Crystal Dawn Weimer.

Nancy D. Vernon, Esq., Office of the District Attorney of Fayette Cty., for Commonwealth of Pennsylvania.

## *OPINION*

Justice EAKIN.

On January 26, 2001, appellant and Curtis Haith fought—appellant sustained a black eye and split lip. Appellant solicited Joseph Stenger and two other unidentified men to retaliate. The four made a stop to retrieve weapons (a baseball bat and a crow bar), then drove to Haith's home. While the two unidentified men hid near the door, appellant lured Haith outside; the two men beat him with the weapons, while appellant repeatedly kicked him and bit his right hand. Stenger got out of the vehicle and shot Haith in the face; the bullet entered his left cheek, exited near his mouth, and produced only superficial wounds. Haith died the following day from the head trauma sustained during the attack.

Police interviewed appellant later that day, at which time she handed over the mud and blood-splattered clothing she was wearing during the attack. Appellant was not arrested until 2004, after she confessed to her ex-boyfriend that she participated in the attack on Haith. Forensic evidence indicated the mud on appellant's clothing was consistent with soil samples from the crime scene, and her dental molds matched the bite mark on Haith's hand.

Appellant was charged with criminal homicide and conspiracy to commit criminal homicide, plus assault charges. A jury found appellant guilty of third degree murder and conspiracy to commit criminal homicide. Notably, the criminal homicide verdict slip provided the option of finding appellant guilty of first degree murder, third degree murder, voluntary manslaughter, or not guilty; the jury indicated third degree murder. The conspiracy verdict slip read "Criminal Conspiracy–Criminal Homicide," and the jury wrote the word "Guilty" below the charge, which provided no gradation options.

At sentencing, the trial court improperly referred to appellant's conspiracy conviction as "criminal conspiracy to commit

murder in the third degree." N.T. Sentencing Hearing, 4/19/06, at 4. The original sentencing orders perpetuated the error; listed at improper docket numbers, these orders identified the convictions as "Criminal Homicide Murder 3rd Degree (F–1)," and "Criminal Conspiracy Murder 3rd Degree (F–1)." Sentencing Orders at No. 1496 of 2004, 4/18/06, & No. 1496–1/4 of 2004, 4/19/06. The sentencing orders were amended to reflect the correct docket numbers, but both amended orders still identified the charge as "Criminal Conspiracy Murder 3rd Degree (F–1)." Amended Sentencing Orders at Nos. 498 & 498–1/4 of 2004, 4/19/06. Both the original and amended orders set forth the same sentence: 12 and one-half to 25 years imprisonment for the murder conviction, and a consecutive two and one-half to five years imprisonment for the conspiracy conviction.

The trial court denied appellant's timely motion to modify sentence, in which she argued her third degree murder and conspiracy to commit criminal homicide charges merged for sentencing purposes. Appellant filed a direct appeal, raising several claims, including whether the conspiracy count was based on insufficient evidence. The trial court held the evidence was sufficient to support the conspiracy verdict; thus, it deemed meritless her argument regarding the validity of the criminal conspiracy to commit homicide verdict. The Superior Court affirmed.

This Court granted allowance of appeal, limited to the issue of "[w]hether it is possible, as a matter of law, to be convicted of conspiracy to commit murder in the third degree?" *Commonwealth v. Weimer*, 594 Pa. 32, 934 A.2d 1148 (2007) (Table). "As this is a purely legal question, our standard of review is *de novo*," and our scope of review is plenary. *In re Milton Hershey School*, 590 Pa. 35, 911 A.2d 1258, 1261 (2006) (citation omitted). Appellant argues:

> It is not possible under the law to commit the crime of conspiracy to commit murder in the third degree. The essence of third degree murder is a homicide that occurs as the unintended consequence of a malicious act. It is impossible for one to intend to commit an unintentional act.

Appellant's Brief, at 10 (citation omitted). Appellant's claim is rooted in sufficiency. "Specifically, [appellant] argues that the Commonwealth failed to present sufficient evidence ... to establish beyond a reasonable doubt that she was guilty of the crimes charged...." *Id.,* at 12.[1]

Our Superior Court has dealt with various cases involving conspiracy and third degree murder. *See Commonwealth v. Johnson,* 719 A.2d 778, 785–86 (Pa.Super.1998) (*en banc*) (defendant can be charged with conspiracy to commit third degree murder because death was natural and probable consequence of such attack, even if defendant did not personally participate in killing); *Commonwealth v. La,* 433 Pa.Super. 432, 640 A.2d 1336, 1345 (1994) (if killing is natural and probable consequence of co-conspirator's conduct, murder is not beyond scope of conspiracy); *Commonwealth v. Bigelow,* 416 Pa.Super. 449, 611 A.2d 301, 304 (1992) (defendant's participation in conspiracy supported third degree murder conviction as victim's death was natural and probable consequence of co-conspirator's conduct); *see also Commonwealth v. Wanamaker,* 298 Pa.Super. 283, 444 A.2d 1176, 1178 (1982) (defendant's conduct revealed conscious disregard of great risk of inflicting death or serious bodily harm upon victim— manifested malice constituted criminal conspiracy to commit third degree murder); *but see Commonwealth v. Clinger,* 833 A.2d 792, 795–96 (Pa.Super.2003) (because it is impossible for one to intend to commit an unintentional act, it is impossible to commit crime of conspiracy to commit third degree murder).

The flaw in appellant's argument is factual—the jury found appellant guilty of conspiracy to commit criminal homicide, not conspiracy to commit third degree murder. *See* Criminal Conspiracy—Criminal Homicide Verdict Slip, 4/7/06. Appellant was neither charged with nor convicted of conspiracy to commit any specific degree of murder, much less third degree murder—as such, the issue for which we granted allowance of appeal can only be addressed by putting the proverbial rabbit in the hat, for it is not made out by these facts. Whatever

---

1. The Commonwealth, to its discredit, declined to file a brief in the present matter.

intellectual appeal the syllogism of the appellant's argument may have, it begs the question. One may certainly be convicted of conspiracy to commit homicide, and the jury's decision to convict of murder in the third degree does not render the preexisting conspiracy a nonentity.

Put another way, the ultimate gradation of the crime accomplished does not in and of itself delimit the degree of crime originally planned—the crime ultimately accomplished does not retroactively limit the scope of the original conspiracy. A jury's determination of the degree of homicide accomplished does not limit the conspiracy's scope. If appellant conspired to intentionally, knowingly, recklessly, or negligently cause the death of Haith, she may be found guilty regardless of which of those adverbs are found or not found by the jury.

To sustain a criminal conspiracy conviction, the Commonwealth must establish a defendant entered into an agreement to commit or aid in an unlawful act with another person or persons, with a shared criminal intent, and an overt act was done in the conspiracy's furtherance. 18 Pa.C.S. § 903;[2]

---

**2.** Section 903 provides, in relevant part:

(a) *Definition of conspiracy.*—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

(b) *Scope of conspiratorial relationship.*—If a person guilty of conspiracy, as defined by subsection (a) of this section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, to commit such crime whether or not he knows their identity.

* * *

(e) *Overt act.*—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903(a)-(b),(e).

*Commonwealth v. Rios,* 546 Pa. 271, 684 A.2d 1025, 1030 (1996) (citations omitted). The overt act need not accomplish the crime—it need only be in furtherance thereof. In fact, no crime at all need be accomplished for the conspiracy to be committed.

The evidence showed appellant solicited Stenger and two other men to drive to Haith's home; after appellant lured him outside, the two men clubbed Haith while appellant kicked him repeatedly, and Stenger shot Haith in the face at close range. Clearly, this evidence supported the jury's finding appellant conspired to cause Haith's death. *See* 18 Pa.C.S. § 2501(a). The evidence clearly supported the jury's finding appellant entered in an agreement to commit or aid in the unlawful act alleged with Stenger and two others, and an overt act was done in the conspiracy's furtherance. *See id.,* § 903. Accordingly, appellant's conspiracy to commit criminal homicide conviction was proper, and we affirm the Superior Court's order.

Jurisdiction relinquished.

Chief Justice CASTILLE, Justice BAER and McCAFFERY and Justice GREENSPAN join the opinion.

Justice GREENSPAN files a concurring opinion in which Chief Justice CASTILLE joins.

Justice TODD files a dissenting opinion in which Justice SAYLOR joins.

Justice GREENSPAN, concurring.

I agree with the majority that "the issue for which we granted allowance of appeal ... is not made out by these facts." Majority Op. at 37, 977 A.2d at 1105. For that reason, it may be we should dismiss this case as improvidently granted. Nevertheless, I agree with the majority that Appellant's judgment of sentence must be affirmed because there is ample evidence of record to support the verdicts rendered, namely, third-degree murder and conspiracy to commit homicide.

I view this case as posing not so much an inquiry into the legality of a conviction for conspiracy to commit third-degree

murder, but instead an inquiry into the comprehensiveness (or lack thereof) of the trial court's instruction on the conspiracy charge. Conspiracy, of course, is routinely charged in homicide cases involving more than one actor. Where degree of guilt for the homicide, rather than outright guilt or innocence, may prove to be the dispositive issue for the jury, the trial court must ensure that the jury is instructed to account for the sort of circumstance revealed by the case. This is so because, as Justice Eakin wisely recognizes, "the crime ultimately accomplished does not retroactively limit the scope of the original conspiracy." Majority Op. at 38, 977 A.2d at 1105.

Despite this fact, the manner in which a criminal defendant is charged in a murder/conspiracy case, and the manner in which a trial court instructs the jury on those charges, indeed can affect the sentence ultimately imposed. This case does *not* raise the question of whether the trial court's instructions to the jury were proper or whether Appellant's sentence was appropriate.[1] Nonetheless, it is important to ensure that a jury is instructed in accordance with the charges that have been brought and the evidence that has been presented. In that way, a proper verdict is rendered and the proper sentencing range prescribed.

There is more to be said on this issue. As Justice Eakin observes, the Superior Court's jurisprudence is replete with cases that involve both conspiracy and third degree murder. I would encourage the Standard Jury Instruction Advisory Committee to consider amending its suggested conspiracy instruction to reflect the need for specificity when a defendant is charged with conspiracy in a case involving homicide.

Finally, I note that despite the seriousness of the charges and the complexity of the issues raised, the Commonwealth declined to file a brief in this case. This lack of advocacy on the Commonwealth's part complicates our review, particularly as it pertains to what charges were actually brought, withdrawn, and pursued. The Commonwealth's decision to forego

1. Appellant did not object to the court's instructions to the jury. The trial court sentenced Appellant to 12½ to 25 years for third-degree murder and 2½ to 5 years for conspiracy.

an opportunity to brief these issues denies this Court the wisdom of litigants who have been engaged in the controversy and have a comprehensive picture of the case and its issues.

Chief Justice CASTILLE joins this concurring opinion.

Justice TODD, dissenting.

As I believe that the record supports Appellant's assertion that she was convicted of the specific offense of conspiracy to commit third-degree murder, which I conclude is a non-cognizable offense, I would hold that the trial court's sentence is illegal and must be vacated. For this reason, I respectfully dissent.

As the Majority recognizes, there were two jury verdict sheets in the instant case. One verdict sheet identified the charge as "Criminal Homicide," and provided the option of finding Appellant guilty of first-degree murder, third-degree murder, voluntary manslaughter, or not guilty. The jury marked the space for third-degree murder. The second jury verdict sheet identified the charge as "Criminal Conspiracy— Criminal Homicide," but provided no separate options. On this verdict sheet, the jury foreman simply wrote "Guilty." Thus, it is unclear from the jury's verdict sheets what type of criminal homicide formed the predicate offense for Appellant's conspiracy conviction.

A number of additional factors, however, indicate that Appellant was convicted of the specific offense of criminal conspiracy to commit third-degree murder. A reading of the trial court's jury instructions, for example, reveals that the jury repeatedly was instructed that it could convict Appellant of conspiracy to commit third-degree murder.[1,2] Furthermore,

1. For example, the day after the trial court's initial instructions to the jury, the jury asked the court to repeat its explanation of the definition of malice and third-degree murder. The trial court explained the offenses of first-degree murder, third-degree murder, and voluntary manslaughter, and the concept of malice with respect to each of the offenses, N.T. Trial, 4/7/06, at 4–6, and instructed the jury as follows:

When two or more people are charged with the crime of first degree murder and one or more of the accused did not actually commit the murder, that is, strike or inflict the fatal blow, the person who did not

the trial court expressly stated that it was sentencing Appellant for the specific offense of conspiracy to commit third-degree murder:

> At Number 1496 of 2004 the OTN Number is H–966964–5. It's a felony of the first degree and murder in the third degree. The maximum fine is $50,000.00. The maximum term of imprisonment is up to forty years. It's a level five offense. The prior record score is one. The offense gravity score is fourteen. We intend to impose a sentence that will fall in the standard range of the Sentencing guidelines.

> AND NOW, April 19, 2006, the sentence of the Court is that the defendant, CRYSTAL DAWN WEIMER, ... undergo IMPRISONMENT in a State Correctional Institution for a period of not less than TWELVE AND ONE–HALF (12–1/2) years nor more than TWENTY–FIVE (25) years.
> \* \* \*

> At Number 1496–1/4 of 2004 the OTN Number being H–966964–5, being *criminal conspiracy to commit murder in the third degree* having a maximum fine of $50,000.00. The maximum term of imprisonment is up to forty years. The Sentencing Guidelines remain the same.

> actually cause the death may be guilty of first degree murder only if either of these two conditions are met: A or one, the first condition is where the defendant was a member of a conspiracy that had as its specific goal the commission of first degree murder, in other words, as applied to this case, you may find the defendant guilty of murder in the first degree if you find beyond a reasonable doubt, first, that the goal of the conspiracy was to commit first degree murder; and, second, that the defendant knowingly entered into such a conspiratorial agreement. If the conspiracy does not have first degree murder as its intended goal, but a member of the conspiracy other than the defendant commits such a murder, *the defendant is not guilty of first degree murder merely because she was part of a conspiracy to commit some other offense such as third degree murder or voluntary manslaughter.*
> N.T. Trial, 4/7/06, at 10–12 (emphasis added).

2. I recognize that Appellant failed to object to the trial court's jury instructions at trial, and, therefore, arguably waived any allegation of error with respect thereto. However, as noted *infra,* the trial court's sentencing of Appellant on a non-cognizable offense implicates the legality of sentence, which cannot be waived. *See Commonwealth v. Vasquez,* 560 Pa. 381, 387, 744 A.2d 1280, 1284 (2000).

AND NOW, April 19, 2006, the sentence of the Court is that the defendant, CRYSTAL DAWN WEIMER, undergo IMPRISONMENT at a State Correctional Institution for a period of not less than TWO AND ONE–HALF (2–1/2) years nor more than FIVE (5) years.

N.T. Sentencing Hearing, 4/19/2006, at 4 (emphasis added).

Additionally, the original record includes two separate sentencing orders by the trial judge dated April 19, 2006, one for "Criminal Homicide Murder 3rd Degree (F–1)," and another for "Criminal Conspiracy Murder 3rd Degree (F–1)." There are also two separate amended sentencing orders, dated April 25, 2006, and the one pertaining to Appellant's conspiracy conviction and sentence identified the charge as "Criminal Conspiracy Murder 3rd Degree (F–1)." [3] Finally, in its 1925(a) opinion, the trial court specifically stated that Appellant was sentenced to 2½ to 5 years "on the conviction of criminal conspiracy to commit third degree murder." Trial Court Opinion, 8/1/06, at 1.

Notwithstanding the above, the Majority concludes "Appellant's claim is rooted in sufficiency" and states:

The flaw in appellant's argument is factual—the jury found appellant guilty of conspiracy to commit criminal homicide, not conspiracy to commit third-degree murder. . . . Appellant was neither charged with nor convicted of conspiracy to commit any specific degree of murder, much less third degree murder—as such, the issue for which we granted allowance of appeal can only be addressed by putting the proverbial rabbit in the hat, for it is not made out by these facts. . . . One may certainly be convicted of conspiracy to commit homicide, and the jury's decision to

3. The original sentencing orders apparently were amended to correct the docket numbers, but both the original and amended sentencing orders provide for the same sentence. Although both of the amended sentencing orders identify the charge as "Criminal Conspiracy Murder 3rd Degree (F–1)," when one of the orders should have identified the charge as "Criminal Homicide Murder 3rd Degree (F–1)," this error does not alter my conclusion that the trial judge sentenced Appellant for the crime of criminal conspiracy to commit third-degree murder.

convict of murder in the third degree does not render the preexisting conspiracy a nonentity.

Put another way, the ultimate gradation of the crime accomplished does not in and of itself delimit the degree of crime originally planned—the crime ultimately accomplished does not retroactively limit the scope of the original conspiracy. A jury's determination of the degree of homicide accomplished does not limit the conspiracy's scope. If appellant conspired to intentionally, knowingly, recklessly, or negligently cause the death of Haith, she may be found guilty regardless of which of those adverbs are found or not found by the jury.

Majority Op. at 38, 977 A.2d at 1105. The Majority then concludes the evidence was sufficient to support Appellant's conviction for conspiracy to commit criminal homicide.

While I acknowledge, as the Majority concludes, that a jury may convict a defendant of third-degree murder and conspiracy to commit first-degree murder, I cannot agree that is what occurred in the instant case.[4] Rather, I find the record strongly indicates that Appellant was convicted of and sentenced on the specific offense of criminal conspiracy to commit third-degree murder.

Although, as the Majority states, "the crime ultimately accomplished does not retroactively limit the scope of the original conspiracy," Majority Op. at 38, 977 A.2d at 1105, in sentencing a defendant on a conviction for conspiracy to commit criminal homicide, a court is required to determine the object crime underlying the conspiracy conviction, 18 Pa. C.S.A. § 905 (except as otherwise provided, conspiracy is a crime of the same grade and degree as the most serious offense which is an object of the conspiracy), as the sentencing guidelines and the statutory maximum sentence are different for murder (first or third degree), voluntary manslaughter and involuntary manslaughter, all of which constitute the crime of

4. Indeed, if the Majority is correct in this regard, then I believe the appropriate action would be to dismiss the instant appeal as having been improvidently granted, as the facts of the instant case would not allow this Court to reach the issue upon which we granted review.

criminal homicide. *See* 18 Pa.C.S.A. § 2504(b) (involuntary manslaughter is a misdemeanor of the first degree, except under certain circumstances where it is felony of the second degree); 18 Pa.C.S.A. § 2503(c) (voluntary manslaughter is a felony of the first degree); 18 Pa.C.S.A. § 1103(1) (maximum sentence for first-degree felony is 20 years); 18 Pa.C.S.A. § 1102(c) (maximum sentence for conspiracy to commit murder, where serious bodily injury results, is 40 years). Thus, while a jury may *convict* a defendant of conspiracy to commit criminal homicide, the trial court, in sentencing that defendant, must *construe* such a nonspecific verdict and determine which predicate type of criminal homicide formed that conspiracy [5]. In the instant case, the record indicates the trial court construed Appellant's conviction of conspiracy to commit criminal homicide as conspiracy to commit third-degree murder. Accordingly, I believe it is necessary to address Appellant's argument upon which we granted review, namely, whether criminal conspiracy to commit third-degree murder is a cognizable offense. If it is not a cognizable offense, then Appellant's sentence is illegal. *See Commonwealth v. Stevenson,* 850 A.2d 1268 (Pa.Super.2004) (a sentence is illegal if no statutory authorization for the sentence exists); *Commonwealth v. Shannon,* 530 Pa. 279, 286, 608 A.2d 1020, 1024 (1992) (plurality) ("[t]he issue of whether or not an illegal sentence has been imposed necessitates the examination of the subject criminal statute."). I conclude it is not a cognizable offense.

The Pennsylvania Crimes Code defines the various degrees of murder as follows:

(a) Murder of the first degree.—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

(b) Murder of the second degree.—A criminal homicide constitutes murder of the second degree when it is commit-

---

5. As a general matter, under prevailing Pennsylvania law, if the evidence supports more than one potential, cognizable offense as the object of the conspiracy, the trial court would be required to impose a sentence only for the lowest of them. *See Commonwealth v. Riley,* 811 A.2d 610, 619–20 (Pa.Super.2002).

ted while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

(c) Murder of the third degree.—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

18 Pa.C.S.A. § 2502(a)-(c). An "intentional killing" is defined as, *inter alia*, "any . . . kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d).

It is well established that malice is an essential element of all degrees of murder. *Commonwealth v. Gribble*, 550 Pa. 62, 77, 703 A.2d 426, 433–34 (1997), *abrogated on other grounds, Commonwealth v. Burke*, 566 Pa. 402, 781 A.2d 1136 (2001). In the legal sense, malice "exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty." *Commonwealth v. Young*, 494 Pa. 224, 228, 431 A.2d 230, 232 (1981) (citations omitted). First-degree murder also requires the finding of a specific intent to kill, a requirement that distinguishes it from all other kinds of murder. *Commonwealth v. Butcher*, 451 Pa. 359, 364, 304 A.2d 150, 153 (1973); *see also Commonwealth v. Anderson*, 538 Pa. 574, 582, 650 A.2d 20, 24 (1994) (a necessary element of first-degree murder is the specific intent to kill).

Second-degree murder includes all of the elements of first-degree murder except the specific intent to kill, and occurs when a defendant is engaged as a principal or an accomplice in the perpetration of a felony. *Commonwealth v. Malone*, 354 Pa. 180, 47 A.2d 445 (1946); 18 Pa.C.S.A. § 2502(b). Perpetration of a felony is defined as "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa. C.S.A. § 2502(d).

Finally, "[m]urder of the third degree is a killing done with legal malice but *without specific intent to kill*. Murder of the

third degree can, however, in some cases involve the specific intent to harm a victim as long as said intent falls short of the specific intent to kill." *Commonwealth v. Pitts,* 486 Pa. 212, 219, 404 A.2d 1305, 1308 (1979) (emphasis added); *see also Clinger,* 833 A.2d at 796 ("the essence of third degree murder is a homicide which occurs as the unintended consequence of a malicious act"); *Commonwealth v. Tolbert,* 448 Pa.Super. 189, 670 A.2d 1172, 1179 (1995) ("[t]hird-degree murder is a killing done with malice that is neither intentional nor committed in the course of a felony"). Malice may be found to exist in an unintentional homicide where a defendant "consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Young,* 494 Pa. at 228, 431 A.2d at 232 (citing *Commonwealth v. Hare,* 486 Pa. 123, 129, 404 A.2d 388, 391 (1979)).

While third-degree murder may involve an intentional act committed with malice, a key element of third-degree murder is the absence of a specific intent to kill. It is the unintended death that results from a malicious intentional act that distinguishes third-degree murder from first-degree murder: if a defendant commits an intentional act with malice, with a specific intent to kill, any resulting death constitutes murder of the first-degree. Thus, an individual may be convicted of third-degree murder if he or she engaged in an *intentional and malicious act,* which resulted in an *unintentional* death.[6]

The crime of conspiracy is defined under the Crimes Code as follows:

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

**6.** Compare the offense of third-degree murder with the offense of voluntary manslaughter, which "involves the specific intent to kill but, by reason of passion and provocation, contains no legal malice." *Pitts,* 486 Pa. at 219, 404 A.2d at 1308.

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).  In order to sustain a conviction for criminal conspiracy, the Commonwealth must prove that a defendant entered into an. agreement to commit or aid in an unlawful act with another person or persons, with a shared criminal intent, and that an overt act was done in furtherance of the conspiracy.  *Commonwealth v. Rios,* 546 Pa. 271, 283, 684 A.2d 1025, 1031 (1996).  The crime of conspiracy is a "specific intent crime," in that it requires a specific intent of promoting or facilitating the commission of the crime which is the object of the conspiracy.  *Commonwealth v. Morton,* 355 Pa.Super. 183, 512 A.2d 1273, 1275 (1986).

Pennsylvania's conspiracy statute is derived from Section 5.03 of the Model Penal Code. 18 Pa.C.S.A. § 903, Official Comment–1972.  Under the Model Penal Code, where the object crime of a conspiracy is defined in terms of a result of conduct, such as homicide, the actor's purpose must be to promote or facilitate that result.  Model Penal Code § 5.03, cmt. 2(c)(i) at 407 (Official Draft and Revised Comments 1985). For example, a conspiracy to destroy an inhabited dwelling, without a specific intent or purpose to kill its occupants, would not constitute a conspiracy to commit homicide.  *Id.* at 408. Thus, of relevance in the instant case, in order to convict a defendant of conspiracy to commit third-degree murder, the Commonwealth would have to prove that the defendant, with the intent of promoting or facilitating third-degree murder, agreed with another person that one or both of them would engage in conduct which constitutes third-degree murder, or engage in an attempt or solicitation to commit third-degree murder.  As previously noted, however, the essence of third-degree murder is a homicide that occurs *in the absence of a specific intent to kill.*  Thus, to be guilty of conspiracy to commit third-degree murder, an individual would have to intend to commit an unintentional killing, a logical impossibility.

The Superior Court faced this dichotomy in *Clinger, supra.* There, the court held, *inter alia,* that the trial court erred in refusing to allow the appellant to withdraw his guilty plea to conspiracy to commit third-degree murder because there was no factual basis for such a plea. President Judge Emeritus Stephen J. McEwen, Jr. aptly stated, "In the present case, since the crime of third degree murder was not accomplished, appellant could only be guilty of conspiracy to commit a crime if he intended that crime to be accomplished. Logic dictates, however, and this Court has recognized that it is impossible for one to intend to commit an unintentional act." 833 A.2d at 796 (citing *Commonwealth v. Spells,* 417 Pa.Super. 233, 612 A.2d 458, 461 n. 5 (1992) ("[a]n attempt to commit murder can only constitute an attempt to commit murder of the first degree, because both second and third degree murder are unintended results of a specific intent to commit a felony or serious bodily harm, not to kill")). *See also Commonwealth v. Barnyak,* 432 Pa.Super. 483, 639 A.2d 40, 45 n. 5 (1994) (noting that there is no crime of attempted third-degree murder); *Commonwealth v. Griffin,* 310 Pa.Super. 39, 456 A.2d 171, 177 (1983) (holding that an individual cannot attempt to commit murder of the second or third degree because the crime of attempt is a specific intent crime, and an attempt to commit second or third degree murder would require proof that the individual intended to perpetrate an unintentional killing, which is logically impossible).[7]

Although this Court has not yet spoken to this specific issue, in my view, there is overwhelming support for the Superior Court's conclusion in *Clinger.* As previously noted, Pennsyl-

---

7. *But see Commonwealth v. Wanamaker,* 298 Pa.Super. 283, 444 A.2d 1176, 1178 (1982) (holding that the defendant's conduct in directing his brother to bring him a loaded rifle and in thereafter firing the rifle in the direction of the complainant revealed a conscious disregard of a great risk that defendant might have inflicted death or serious bodily harm upon complainant and, as such, amounted to a conspiracy between the defendant and his brother to engage in activity that manifested such malice as to constitute a criminal conspiracy to commit third-degree murder); 42 Pa.C.S.A. § 9714(g) ("the term 'crime of violence' means murder of the third degree, voluntary manslaughter, aggravated assault ... or criminal attempt, criminal conspiracy or criminal solicitation to commit murder or any of the offenses listed above.").

vania's conspiracy statute is derived from the Model Penal Code. The American Law Institute, in its Commentary to the Model Penal Code, explained:

> when recklessness or negligence suffices for the actor's culpability with respect to a result element of a substantive crime, as for example, homicide through negligence is made criminal, there could not be a conspiracy to commit that crime. This should be distinguished, however, from a crime defined in terms of conduct that creates a risk of harm, such as reckless driving or driving above a certain speed limit. In this situation the conduct rather than any result it may produce is the element of the crime, and it would suffice for guilt of conspiracy that the actor's purpose was to promote or facilitate such conduct—for example, if he urged the driver of the car to go faster and faster.

Model Penal Code § 5.03 cmt. 2(c)(i) at 408 (Official Draft and Revised Comments 1985).

In his treatise on criminal law, Wayne R. LaFave also opined that, because conspiracy is a specific intent crime, it is not possible to conspire to commit a crime that results from an unintended consequence:

> the fact that conspiracy requires an intent to achieve a certain objective means that individuals who have together committed a certain crime have not necessarily participated in a conspiracy to commit that crime.... It follows, therefore, that there is no such thing as a conspiracy to commit a crime which is defined in terms of recklessly or negligently causing a result.

Wayne R. LaFave, *Criminal Law*, § 12.2(c), at 630 (4th ed.2003).

The high courts of a number of our sister states have adopted the reasoning of LaFave and the Model Penal Code and concluded that it is impossible to conspire to commit a crime that is defined by its unintended consequence. For example, in *Palmer v. People*, 964 P.2d 524 (Colo.1998), the Supreme Court of Colorado concluded that conspiracy to commit reckless manslaughter was not a cognizable crime. In

doing so, the court noted that conspiracy is a specific intent crime, requiring two distinct specific intents: (1) the specific intent to agree to commit a particular crime; and (2) the specific intent to cause the result of the crime to which the conspirators agreed. *Id.* at 529. The court then reasoned:

The culpable mental states for conspiracy and for reckless manslaughter are legally and logically inconsistent. The crime of conspiracy to commit reckless manslaughter would require that the defendant have the specific intent to commit reckless manslaughter. Crimes of recklessness are, by definition, crimes that are committed unintentionally, but with a conscious disregard for a substantial and unjustifiable risk that a result will occur. Thus, the state of mind required for reckless manslaughter is irreconcilable with the specific intent required for conspiracy.... Logic dictates that one cannot agree in advance to accomplish an unintended result.

*Id.* at 529. The court specifically rejected the state's argument that it need only establish that the defendant had the conscious objective to engage in conduct involving a substantial and unjustifiable risk, emphasizing that the conspiracy requires *the specific intent to cause the result of the crime* to which the conspirators agreed. *Id.* (italics added).

In *State v. Donohue*, 150 N.H. 180, 834 A.2d 253 (2003), the Supreme Court of New Hampshire reversed an appellant's conviction for conspiracy to commit reckless second-degree assault, first stating that in order to establish liability for conspiracy, "the State must demonstrate that the defendant had a true purpose to effect the criminal result." *Id.* at 255. The court then noted that the Model Penal Code, from which New Hampshire's Criminal Code is largely derived, "explicitly recognizes that one cannot conspire to commit a crime where mere recklessness or negligence with respect to a result element suffices for the actor's culpability." *Id.* at 256. Recognizing that numerous other state courts have subscribed to the position set forth in the Model Penal Code that one cannot conspire to achieve an unintended result, the *Donohue* court likewise expressly adopted the view that "one cannot

conspire to commit a crime where the culpability is based upon the result of reckless conduct," *id.* at 257–58, concluding:

> [a] person cannot be guilty of conspiracy to commit a reckless assault because an assault, like a reckless manslaughter, is controlled by the resulting harm. . . . In other words, a person cannot agree, in advance, to commit a reckless assault, because, by definition, a reckless assault only arises once a future harm results from reckless behavior.

*Id.* at 257.

In *State v. Baca*, 124 N.M. 333, 950 P.2d 776 (1997), the Supreme Court of New Mexico reversed an appellant's conviction for conspiracy to commit "depraved mind murder" because, under New Mexico law, the crime of conspiracy "requires both an intent to agree and an intent to commit the offense which is the object of the conspiracy." *Id.* at 788. The court noted that depraved-mind murder, as defined at that time by statute and case law, "is an unintentional killing resulting from highly reckless behavior," and, citing the Model Penal Code, concluded that it could not be the object of a conspiracy. *Id.*[8]

The Supreme Court of Connecticut also repeatedly has held that "persons cannot attempt or conspire to commit an offense that requires an unintended result." *State v. Foster*, 202 Conn. 520, 522 A.2d 277, 281 (1987); *see State v. Beccia*, 199 Conn. 1, 505 A.2d 683, 684–85 (1986) (conspiracy to commit arson in third degree is not a cognizable offense because third-degree arson requires reckless mental state and conspirators cannot agree to accomplish a required specific result recklessly); *State v. Almeda*, 189 Conn. 303, 455 A.2d 1326, 1330–31 (1983) (attempted manslaughter is not a cognizable offense because it is not possible to have specific intent to commit unintentional killing).

A number of intermediate appellate courts have reached similar conclusions. *Cf., e.g., Evanchyk v. Stewart*, 340 F.3d

---

8. That court opined, however, that it "was not convinced that the crime of conspiracy to commit depraved-mind murder is 'logically impossible.'" 950 P.2d at 788.

933, 939–40 (9th Cir.2003) (holding that, where both first-degree and felony murder were possible bases for a murder conviction, a jury instruction that suggested the jury could rely on felony murder as the predicate offense for a conviction for conspiracy to commit murder was improper because, under Arizona law, a conviction for conspiracy to commit first-degree murder requires a specific intent to kill); *State v. Wilson*, 30 Kan.App.2d 498, 43 P.3d 851, 853–54 (2002) (noting that Kansas does not recognize the crime of conspiracy to commit felony murder because conspiracy requires a specific intent and one cannot intentionally conspire to commit a crime which requires either negligence or no *mens rea* ); *Conley v. State*, 146 Ga.App. 739, 247 S.E.2d 562, 565 (1978) (holding that one cannot conspire to commit voluntary manslaughter, which is a killing in the heat of passion).

As previously noted, Section 903 of our Crimes Code is derived from the Model Penal Code, which contemplates that one cannot conspire to commit a crime for which the actor's culpability is dependent on an unintended result. The statutory definitions and case law regarding the offense of conspiracy and the offense of third-degree murder in Pennsylvania are, on their face and in their application, logically inconsistent and irreconcilable. Thus, as did the courts of our sister states in the decisions identified above, I would hold that conspiracy to commit third-degree murder is not a cognizable offense under Pennsylvania law.

Because, in my view, the record supports the conclusion that Appellant was convicted and sentenced for the specific crime of conspiracy to commit third-degree murder, a non-cognizable offense, I would find that the sentencing court did not have the authority to impose the subject sentence, and that the sentence is, therefore, illegal. Accordingly, I would vacate Appellant's judgment of sentence, and remand the case for resentencing.

Justice SAYLOR joins this dissenting opinion.