2020 PA Super 57

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARTIN HERNANDEZ | : | |
| | : | |
| Appellant | : | No. 225 EDA 2018 |

Appeal from the Judgment of Sentence May 2, 2014
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012606-2011

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

OPINION BY BOWES, J.:                              **FILED MARCH 10, 2020**

Martin Hernandez appeals *nunc pro tunc* from the May 2, 2014 judgment of sentence finding him guilty of third-degree murder, recklessly endangering another person ("REAP"), possessing an instrument of crime, and two violations of the Pennsylvania Uniform Firearms Act.  We affirm.

The trial court summarized the factual background as follows:

A large group of friends went to Jalapeno Joe's, a club on Castor Avenue, Philadelphia, [on] the night of February 20, 2011.  After drinking heavily, some members of the group began to leave the club, including Maria Guzman and her boyfriend Christian Aguilar.  Ms. Guzman got into a verbal confrontation with another female patron, and Mr. Aguilar called out[,] "[C]ontrol your bitch."

[Appellant], who was a distance away but within earshot, drew his handgun and fired at Mr. Aguilar, striking him twice.  One bullet struck him in the [hip, and the other struck him in the shoulder].  Mr. Aguilar was pronounced dead at the hospital a few hours later, at 5:34 a.m.   [Appellant] admitted at trial that he was the gunman, testifying that he "tagged him rapid fire, two times."  [Appellant] claimed that [the] decedent had pointed a gun at him, and further testified: "Like, I didn't mean to kill him.  I am telling

you what's going on. He fell, right, and I am like, damn, he was just talking real crazy, and he was about to shoot me." However, [Appellant's] brother saw the entire incident and testified that decedent did not have a gun.

The people gathered outside the club immediately dispersed after shots were fired. Some of the people who ran away got into a car driven by [Appellant's] brother. [Appellant] met up with them in a parking lot a few blocks away, and after entering the car he told the women in the back seat that he [shot the decedent] because of them. The women eventually exited the car after being told not to tell anyone what they had seen at the club. However, several of the women reported what they had seen to homicide detectives.

Further, evidence at trial established that [Appellant's] sister and the mother of [Appellant's] child attempted to intimidate witnesses into not testifying. They went to the place of work of the witnesses, and when one witness attempted to testify at an earlier proceeding, she was threatened outside the courtroom and fled fearing for her safety.

[Appellant] admitted that he was not licensed to carry a firearm.

Trial Court Opinion, 7/11/18, at 2-3 (internal citations omitted; cleaned up).

On March 14, 2013, a jury found Appellant guilty of the aforementioned crimes and he was sentenced to an aggregate term of twenty-nine and one-half to fifty nine years of incarceration. Appellant filed a notice of appeal, but this Court ultimately dismissed the appeal for failure to comply with Pa.R.A.P. 3517. Thereafter, Appellant's direct appellate rights were reinstated *nunc pro tunc* by way of a Post-Conviction Relief Act petition. Appellant timely filed a notice of appeal. The trial court ordered Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b), Appellant complied, and the trial court filed a Rule 1925(a) opinion.

Appellant has raised the following issues for our consideration:

1. Did the trial court err and abuse its discretion, violating Appellant's right to a fair trial, when it denied his request for a continuance when his appointed counsel was unprepared for trial, trial counsel was demonstrably hostile to Appellant, and retained counsel was available to assume representation with a short continuance?

2. Did the trial court err and abuse its discretion when it imposed consecutive terms of imprisonment on Appellant's charges for third-degree murder and [REAP]?

3. Did the trial court err and abuse its discretion when it permitted the admission of testimony that Appellant was arrested in close proximity to a firearm unrelated to the underlying charges?

4. Did the trial court err and abuse its discretion, violating Appellant's state and federal rights to a fair trial and due process, when it permitted the prosecutor to improperly comment on the credibility of law enforcement witnesses and characterize which lay witnesses testified truthfully?

5. Did the trial court abuse its discretion and was it prosecutorial misconduct to admit pervasive evidence that Commonwealth witnesses were threatened?

Appellant's brief at 1-2.

In Appellant's first issue, he asserts that the trial court erred by refusing to grant a continuance so that Appellant could obtain alternative representation. *See* Appellant's brief at 12-24.

Our standard of review in this context is as follows:

It is well-settled that the decision to grant or deny a request for a continuance is within the sound discretion of the trial court. Further, a trial court's decision to deny a request for a continuance will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record . . . .

***Commonwealth v. Prysock***, 972 A.2d 539, 541 (Pa.Super. 2009) (internal citations omitted). Moreover, this claim implicates Appellant's right to counsel pursuant to the Sixth Amendment to the U.S. Constitution and by Article I, § 9 of the Pennsylvania Constitution. Although criminal defendants enjoy the right to choose counsel at their own expense, our Supreme Court has stated that this right is not absolute:

> Rather, the right of the accused to choose his own counsel, as well as the lawyer's right to choose his clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. Thus, this Court has explained that while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice. At the same time, however, we have explained that a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.

***Commonwealth v. McAleer***, 748 A.2d 670, 673-74 (Pa. 2000) (internal citations omitted).

As detailed above, on the first day of trial Appellant expressed his belief that defense counsel was not properly prepared and requested a continuance so that he could obtain alternative counsel. ***See*** N.T. Trial, 5/6/13, at 8-79. The trial court denied Appellant's request due to its conclusion that a last-minute delay of proceedings would prejudice the Commonwealth due to its findings that: (1) Appellant's alternative counsel had not yet been retained

- 4 -

and was therefore not prepared to proceed to trial that day, *id*. at 74;[1] (2) delaying the trial to permit alternative counsel to properly familiarize himself with the case would effectively delay the case by at least seven months,[2] *id*.; (3) a continuance would prejudice the Commonwealth due to the extreme reluctance of its witnesses, who had been threatened by Appellant's family and had only appeared via material witness petitions and bench warrants, *id*. at 71-73, 75; and (4) Appellant's defense counsel was sufficiently competent. *Id*. at 75-76.  Overall, the trial court found that Appellant's request to replace his attorney was a "delaying tactic" that it could not countenance due to the potential for prejudice to the Commonwealth.  *Id*. at 76.

This Court has set forth the following factors to consider on appeal from a trial court's ruling on a continuance motion to obtain private representation: (1) whether the court conducted an extensive inquiry into the underlying causes of defendant's dissatisfaction with current counsel; (2) whether the defendant's dissatisfaction with current counsel constituted irreconcilable

---

[1]  In relevant part, alternative counsel testified that he was approached with a "firm" offer of retainer by Appellant's family one week prior to trial, and was offered a check.  **See** N.T. Trial, 5/6/13, at 27-30.  Alternative counsel refused to accept the retainer unless a continuance was entered, and apparently attempted to contact the trial court, *ex parte*, to see if this would be possible.  *Id*. at 27.  Based on our review of the certified record, Appellant's oral request for a continuation on the initial day of trial was the first time that an issue of representation was formally raised with the trial court.

[2]  The trial court's delay determination was based upon scheduling.  **See** N.T. Trial, 5/6/13, at 74 ("[I]t would be at least until 2014 that I would have an opening in my calendar to hear this matter.").

differences; (3) the number of prior continuances; (4) the timing of the motion for continuance; (5) whether private counsel had actually been retained; and (6) the readiness of private counsel to proceed in a reasonable amount of time. *See Commonwealth v. Broitman*, 217 A.3d 297, 300 (Pa.Super. 2019) (citing *Prysock*, *supra* at 543).

At bedrock, Appellant's request for a continuance was grounded in his averments that his counsel was not adequately prepared for trial. The only concrete complaints levied by Appellant were that defense counsel: (1) had never visited him during his incarceration to prepare for trial; and (2) failed to respond to two letters Appellant sent him. *Id*. at 17-18. Appellant also made reference—for the first time—to several witnesses that he claimed had knowledge regarding the incident and who would testify beneficially.[3]

Defense counsel testified that he had: (1) never received the letters cited by Appellant, *id*. at 41; (2) reviewed the discovery materials in the case "on no less than half a dozen occasions," *id*. at 32; (3) conferred with Appellant multiple times during the course of his representation, *id*. at 64; and (4) made use of an investigator to interview witnesses and investigate

_____

[3] In pertinent part, Appellant identified two "new" individuals whom he knew only as "Joshua Alvarado" and "Q." *See* N.T. Trial, 5/6/13, at 35. The remainder of the individuals identified by Appellant were already well-known to the parties and attorneys, and had previously been interviewed. *Id*. at 35-37. Appellant also alluded to "three other people" whom he would like to have interviewed as potential witnesses, but could not provide names or contact information for them when asked three separate times. *Id*. at 68-70.

potential defenses, who also met with Appellant to obtain information regarding the case. *Id*. at 33, 65-66. Defense counsel averred that Appellant had never provided any information regarding these "new" witnesses during the course of his representation. *Id*. at 32.

We are particularly mindful that "[w]here, as here, the defendant and his counsel offer competing contentions as to the readiness of defense counsel for trial, **it is for the trial court to decide whose portrayal of defense counsel's degree of preparedness is more accurate**." *Commonwealth v. Cook*, 952 A.2d 594, 618 (Pa. 2008) (emphasis added). Instantly, the trial court conducted a thorough investigation of defense counsel's preparedness and determined that Appellant's stated concerns were unjustified and did not rise to the level of "irreconcilable differences." N.T. Trial, 5/6/13, at 76.

Although no other continuances had been granted to Appellant in this case, he waited until one week before trial to attempt to retain alternative counsel via a "firm" offer, and did not request a continuance for this purpose until the day trial was to commence. *See* N.T. Trial, 5/6/13, at 27-30. Furthermore, Appellant never actually retained alternative counsel, and the substitute counsel chosen by Appellant testified that he could not be immediately ready for trial without a continuance. Due both to the Commonwealth's concerns regarding its reluctant witnesses and the trial court's own docket, the trial court found that the factors set forth in *Prysock* weighed in favor of denying Appellant's request. *Id*. at 73-76. Based on the

foregoing discussion and our review of the certified record, we discern no abuse of discretion in the trial court's denial. **Accord Broitman**, **supra** at 300 (holding that a motion for continuance made on the first day of trial was properly denied where it would have caused "too great of an imposition on both the Commonwealth and the trial court's already crowded schedule").

In his second issue, Appellant asserts that the trial court erred in imposing consecutive sentences as to his convictions for third-degree murder and REAP because those offenses should have merged for sentencing purposes. **See** Appellant's brief at 24-27 (citing **Commonwealth v. Musselman**, 396 A.2d 625, 625-26 n.1 (Pa. 1979) (plurality) (stating that REAP is a lesser included offense of third-degree murder)). This issue implicates the legality of Appellant's sentence.[4] As such, our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009).

Under Pennsylvania law, "[m]erger of offenses is appropriate where: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included in the statutory elements of the other offense." **Commonwealth v. Roane**, 204 A.3d 998, 1002 (Pa.Super. 2019). In relevant part, these factors are drawn directly from the statutory

---

[4] The Commonwealth has argued that Appellant has waived this claim under a variety of different theories. We disagree. **See Commonwealth v. Robinson**, 931 A.2d 15, 24 (Pa.Super. 2007) ("[W]e note that merger is a nonwaivable challenge to the legality of the sentence.").

framework established at 42 Pa.C.S. § 9765. We are also mindful of the following guidance from our Supreme Court:

> [E]xamination of the elements of the crimes **as charged** is sometimes necessary, especially when dealing with an offense that can be proven in alternate ways.
>
> Therefore, while Section 9765 indeed focuses on an examination of "statutory elements," we cannot ignore the simple legislative reality that individual criminal statutes often overlap, and proscribe in the alternative several different categories of conduct under a single banner.

*Commonwealth v. Baldwin*, 985 A.2d 830, 837 n.6 (Pa. 2009) (emphasis in original).

At the outset, we note that Appellant's brief is conspicuously devoid of any discussion of § 9765, which statutorily governs merger. This oversight is significant as it undercuts Appellant's reliance upon *Musselman*, which predates the effective date of § 9765 by over twenty years.[5] In the absence of the application of the modern test for sentencing merger, it is unclear how *Musselman* continues to constitute good law given the gulf of precedent and legislative enactments that have followed in the intervening decades. *See Commonwealth v. Coppedge*, 984 A.2d 562, 564 (Pa.Super. 2009) ("The analyses by cases arising before the effective date of 42 Pa.C.S. § 9765 are therefore not instructive here."). We also note that *Musselman* was a

---

[5] The effective date of § 9765 is February 7, 2003. *See* 2002 Pa. Legis. Serv. Act 2002-215 (S.B. 1452).

plurality opinion, and as such has no binding effect as precedent in this case. *See Commonwealth v. Thompson*, 985 A.2d 928, 937 (Pa. 2009).

Third-degree murder is defined as a criminal homicide[6] committed with malice "that [is] not intentional (first-degree) or committed during the perpetration of a felony (second-degree)." *Commonwealth v. Packer*, 168 A.3d 161, 168 (Pa. 2017) (citing 18 Pa.C.S. § 2502(c)). A person is guilty of REAP if he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

There is similarity in the definitions of these offenses, as one who commits homicide can reasonably be said to have placed another in danger of death (and, indeed, consummated that apprehension). This Court has noted this statutory overlap before. *See Commonwealth v. Sobrado-Rivera*, 2019 WL 2881486, at \*8 (Pa.Super. July 3, 2019) (non-precedential decision) ("The argument could be made that when a defendant commits [a killing], he 'recklessly engages in conduct which places the victim in danger of death.'" (quoting 18 Pa.C.S. § 2705)). However, that is not the end of our analysis.

The trial court concluded that Appellant's respective convictions for third-degree murder and REAP do not merge because the convictions involved different victims. Specifically, the trial court explained that "the charges relate

---

[6] *See* 18 Pa.C.S. § 2501(a) ("A person is guilty of criminal homicide if he intentionally, knowingly, recklessly, or negligently causes the death of another human being.").

to two separate victims. Christian Aguilar was the victim of the murder, and his girlfriend Maria Guzman was the victim of the [REAP] charge." Trial Court Opinion, 7/11/18, at 6. Although not cited by the trial court in support of its holding, this Court recently addressed a very similar issue in **Sobrado-Rivera**, **supra** at *8, wherein we held that convictions for first-degree murder and REAP did not merge where "the victims of the crime are not the same."

In **Sobrado-Rivera**, the defendant was convicted of first-degree murder and REAP with respect to a shooting he committed in a neighborhood. **Id**. at 1. This Court held that these convictions did not merge because the crimes were charged and pursued with respect to different victims. Specifically, the defendant's first-degree murder conviction related to the death of the shooting victim, while the REAP conviction was separately tied to the people in the neighborhood whom defendant had subjected to danger in opening fire. **See Sobrado-Rivera**, **supra** at *8. Based upon these facts, this Court concluded that the defendant "was not charged with recklessly endangering the victim, but rather, with recklessly endangering other residents in the area at the time of the shooting." **Id**.

The rationale behind **Sobrado-Rivera** was our Supreme Court's holding in **Commonwealth v. Frisbie**, 485 A.2d 1098, 1101 (Pa. 1984) ("[T]he imposition of multiple sentences upon a defendant whose single unlawful act injures multiple victims is legislatively authorized and, consequently, does not violate the double jeopardy clause of the Fifth Amendment."). Thus, the

holding is not predicated upon a rote application of the relevant statutory framework, but is grounded in the double-jeopardy jurisprudence that continues to animate our sentencing merger law even after the adoption of § 9765. *See Commonwealth v. Davidson*, 938 A.2d 198, 217 (Pa. 2007) ("[T]he purpose of the merger doctrine is double jeopardy-based, *i.e.*, to safeguard against multiple punishments for the same act.").

Although *Sobrado-Rivera* constitutes persuasive and not binding precedent, we adopt its rationale and apply it to the instant matter. As in *Sobrado-Rivera*, Appellant opened fire on Mr. Aguilar in an area that was populated with individuals other than the victim, *e.g.*, the parking lot outside of a crowded Philadelphia club. In particular, Ms. Guzman was standing next to the victim before and during the shooting. Indeed, Ms. Guzman's testimony confirms that she was holding the victim's arm when he was shot, and that other individuals were also close at hand. *See* N.T. Trial, 5/8/13, at 173-75. The Commonwealth's claim at trial was **not** that Appellant had committed REAP against Mr. Aguilar, but that Appellant's actions subjected other individuals in close proximity to Mr. Aguilar to grave danger. *See* N.T. Trial, 5/8/13, at 199 (Ms. Guzman testifying that she and three other individuals were in "close proximity" to the victim). In particular, the Commonwealth emphasized the risk to Ms. Guzman. *See* N.T. Trial, 5/13/13, at 150 ("When the shots are being fired, there is Maria Guzman. She is standing next to her boyfriend. She is placed in danger."). The trial court's jury instructions also

- 12 -

made it clear that the Commonwealth's charge of REAP was not directed at Mr. Aguilar. **See** N.T. Trial, 5/13/13, at 212-13.

Appellant was **not** charged with and convicted of REAP with respect to any danger in which he may have placed his murder victim. Rather, Appellant's charge and conviction was a result of the danger in which he placed other individuals near the scene of the shooting. Because these crimes implicated different victims as charged and convicted, no merger results. **Accord Sobrado-Rivera**, **supra** at *8; **see also Frisbie**, **supra** at 1101. As such, no relief is due on this claim.

Appellant's third claim implicates the admissibility of evidence. Specifically, Appellant asserts that the trial court "improperly permitted testimony that when Appellant was arrested, he was found in close proximity to a firearm that unquestionably was not used in the shooting." Appellant's brief at 27. He asserts the evidence was both irrelevant and prejudicial.[7] **Id**.

"Our standard of review for a trial court's evidentiary rulings is narrow, as the admissibility of evidence is within the discretion of the trial court and

---

[7] To the extent that Appellant asserts that this evidence should have been excluded as irrelevant, that claim is waived for failure to raise it in a contemporaneous objection before the trial court. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Appellant's only objection to the introduction of this evidence was limited to an assertion that its prejudicial effect outweighed its probative value. **See** N.T. Trial, 5/10/13, at 89-92. Thus, this claim is waived. **See Commonwealth v. Bedford**, 50 A.3d 707, 713-14 (Pa.Super. 2012) ("If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal.").

will be reversed only if the trial court has abused its discretion." ***Commonwealth v. Melvin***, 103 A.3d 1, 35 (Pa.Super. 2014). The Pennsylvania Rules of Evidence define "relevant evidence" as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" as long as "the fact is a consequence in determining the action." Pa.R.E. 401(a)-(b). Relevant evidence is admissible, and irrelevant evidence is inadmissible. ***See*** Pa.R.E. 402. Even relevant evidence may be excluded if its probative value is outweighed by prejudice. ***See*** Pa.R.E. 403.

When Appellant was arrested at a motel in Trevose, Pennsylvania in connection with this case, he was found in possession of a handgun that was not the murder weapon. ***See*** N.T. Trial, 5/10/13, at 89-92. When the Commonwealth expressed its intent to elicit testimony that Appellant was arrested while in possession of this weapon, defense counsel requested that the evidence be excluded as unfairly prejudicial. ***Id***. at 89-90. Ultimately, the trial court concluded that "the Commonwealth is permitted to introduce evidence of [Appellant's] knowledge of or access to weapons, whether or not it was the actual weapon used in the killing."[8] ***Id***. at 92-93 (citing

---

[8] ***See Commonwealth v. Robinson***, 721 A.2d 344, 351 (Pa. 1998) ("[W]here a weapon can not be specifically linked to a crime, such weapon is not admissible as evidence. However, there is an exception . . . where the accused had a weapon . . . suitable to the commission of the crime charged. This weapon is always a proper ingredient of the case for the prosecution."); ***but cf. Commonwealth v. Christine***, 125 A.3d 394, 401 (Pa. 2015) ("The theory of the exception is that the weapon possessed could have been the weapon used—that simply is not the case here . . . .").

*Commonwealth v. Broaster*, 863 A.2d 588, 591-92 (Pa.Super. 2004) (holding that admission of evidence that defendant discarded a handgun not connected to the murder was properly admitted where it was relevant and limiting instructions were issued by both the prosecutor and trial court).

In ***Broaster***, this Court specifically concluded that "the discarded gun was relevant to identify the [defendant] and connect him with the crime at issue." *Id*. at 592. Appellant has attempted to distinguish this holding in the present circumstances by arguing that "neither Appellant's identity or connection to the crime was at issue." Appellant's brief at 30. The facts of ***Broaster*** are not a perfect parallel to the present circumstances. However, we ultimately conclude that Appellant is not entitled to relief. Even assuming, *arguendo*, that this complained-of testimony **should** have been excluded as unfairly prejudicial, any such error was harmless.

This Court has previously held that testimony adduced by the Commonwealth which establishes a defendant's possession of a weapon not directly connected to the at-issue crimes constitutes harmless error where there is an "overwhelming body of evidence" that speaks to the defendant's guilt. ***See Commonwealth v. DeJesus***, 880 A.2d 608, 615-16 (Pa. 2005); ***see also Commonwealth v. Williams***, 640 A.2d 1251, 1261 (Pa. 1994) ("Even assuming it was error to have admitted these guns, in light of the overwhelming evidence of [defendant's] guilt, such error is harmless."),

- 15 -

*overruled on other grounds*, **Commonwealth v. Christine**, 125 A.3d 394, 401 (Pa. 2015).

Instantly, Appellant confessed to the shooting at trial and also freely admitted that, since 2007, he "always" carried a gun on his person. **See** N.T. Trial, 5/13/13, at 24-25, 34, 45. In fact, Appellant also explicitly revisited and confirmed that he possessed a handgun at the time of his arrest. **Id**. at 37. Earlier in the trial, Appellant had also urged his brother in open court to testify that Appellant confessed to the killing. **See** N.T. Trial, 5/9/13, at 48-49. The only true disputed issue at trial was Appellant's claim of self-defense. Appellant's perpetration of the shooting and his ready familiarity with and access to firearms was overwhelmingly established via other evidence. As such, any error concerning the admission of this evidence was harmless. **Accord DeJesus**, **supra** at 615-16; **see also**, **e.g.**, **Williams**, **supra** at 1261.

In Appellant's fourth issue, he asserts that the prosecutor committed misconduct by expressing his personal opinions regarding the credibility of law enforcement and lay witnesses in his closing remarks to the jury. **See** Appellant's brief at 33. The following legal principles will guide our review:

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial

- 16 -

unless the comments unavoidably prejudiced the jury and prevented a true verdict.

***Commonwealth v. Bedford***, 50 A.3d 707, 715-16 (Pa.Super. 2012).

Appellant's allegation of misconduct encompasses two statements made by the prosecutor during his closing argument to the jury. By way of establishing the relevant factual background, Appellant's principal argument at trial was that he had acted in justifiable self-defense by shooting Mr. Aguilar. In support of this claim, Appellant testified that Mr. Aguilar had pulled a gun out and menaced Appellant and his brother outside of the club immediately before the shooting. ***See*** N.T. Trial, 5/13/13, at 34. However, several eyewitnesses testified that Mr. Aguilar did not engage in threatening behavior prior to the shooting. ***See*** N.T. Trial, 5/8/13, at 134-35, 171-76, 202; ***see also***, ***e.g.***, N.T. Trial, 5/9/13, at 156-59.

The prosecutor's comments related to the testimony of Solangela Correa, whose initial statements to police and court officials differed significantly from the narrative she ultimately presented at trial.[9] Specifically, Ms. Correa indicated to homicide detectives that she had seen Appellant shoot Mr. Aguilar without any prior menacing behavior by the decedent. ***See*** N.T. Trial, 5/9/13, at 247-48. Additionally, Ms. Correa had previously averred that

---

[9] Ms. Correa's statement was taken by Detective Nathan Williams, who also testified at trial. In relevant part, he recited portions of Ms. Correa's original statement to police, which positively identified Appellant as the shooter and contained no averments indicating that Mr. Aguilar reached for, or otherwise possessed, a gun on that evening. ***See*** N.T. Trial, 5/10/13, at 175-86.

- 17 -

she failed to appear at the preliminary hearing because she had been threatened by Appellant's mother. *Id*. at 256-57. However, at trial, Ms. Correa's story suddenly and inexplicably corroborated Appellant's version of events that Mr. Aguilar had "reached" for a gun prior to Appellant shooting him. *Id*. at 237-39. Moreover, Ms. Correa also claimed at trial that homicide detectives refused to record her version of events, threatened her with imprisonment, and thereby forced her to present allegedly false testimony that inculpated Appellant in the shooting and omitted any mention of Mr. Aguilar having a gun. *Id*. at 241, 257-59.

With this context in mind, the prosecutor made the following observation during his closing arguments referencing the tension between Ms. Correa's pre-trial statements and her trial testimony: "But remember what she said. Oh, I told the detective [Mr. Aguilar] had a gun. That Detective is not going to lie. He is going to take down the statement because that's not his family." N.T. Trial, 5/13/13, at 169-70. Appellant lodged an objection, which was overruled. *Id*. Appellant's claim also references other statements regarding Ms. Correa's at-trial testimony: "[Ms. Correa], give her credit. At least she told the police the truth, but I can't blame her. She's got to live there. Those are her people. Got up here and lied and tried to help [Appellant]." *Id*. at 174-75.

These remarks were made near the end of the prosecutor's summation, after which the trial court, *sua sponte*, gave the following curative instruction:

"Ladies and gentlemen, whether or not a witness, any witness is telling the truth is a matter for you to decide. So you may not accept an attorney's account of whether a witness told the truth or not. You heard the evidence. You make the decision." *Id*. at 176. At the conclusion of the prosecution's summation, defense counsel made a timely[10] motion for a mistrial based on these statements, which was denied. *Id*. at 177-79.

In relevant part, Appellant's argument is that the prosecution engaged in improper "vouching" through the comments detailed above. *See Commonwealth v. Chmiel*, 889 A.2d 501, 544 (Pa. 2005) ("It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor.").

This Court has held that where a prosecutor expresses personal beliefs regarding the credibility of witnesses, an appropriate curative instruction from the trial court will remove the danger of prejudice. *See Commonwealth v. Collins*, 70 A.3d 1245, 1253-54 (Pa.Super. 2013) (holding a "curative instruction" given at the close of summation and after multiple objections

_____

[10] *See*, *e.g.*, *Commonwealth v. Judy*, 978 A.2d 1015, 1018 (Pa.Super. 2009) ("[O]bjection and request for mistrial on the ground prosecutorial misconduct are properly preserved notwithstanding the fact that counsel waited until the end of the assistant district attorney's closing to lodge the objection and move for a mistrial.").

during the Commonwealth's closing was sufficient such that there "was no danger of any prejudice"). Instantly, the trial court gave a curative instruction at the end of the Commonwealth's closing arguments addressing the objections raised by defense counsel. As such, this allegation of misconduct is devoid of merit. *Id*. at 1254.

With respect to Appellant's final claim, he argues the trial court erred by refusing to declare a mistrial over the prosecutor's introduction of evidence that several of the Commonwealth's witnesses were threatened by members of Appellant's family. *See* Appellant's brief at 39-55 (arguing that the trial court erred when it "permitted . . . the admission of pervasive evidence that the three main Commonwealth witnesses had been threatened").

Appellant's argument on this issue centers on testimony from Ms. Correa, Staceyann Santiago, and Grace Serrano, all of whom were present in the parking lot on the night of the shooting. Initially, we note that Appellant is correct in noting that the Commonwealth adduced testimony regarding threats made against the witnesses by Appellant's family members at trial. There was also an incident in the courtroom involving members of Appellant's family being on their phones, and potentially attempting to threaten Ms. Serrano during and after her testimony. *See* N.T. Trial, 5/9/13, at 204-22. However, no testimony or commentary concerning these alleged threats were presented to the jury who were quickly taken out of the room. *Id.* at 206.

Appellant has waived these claims by failing to raise them with the trial court in the first instance. Our review of the certified record indicates that Appellant did not make a timely request for a mistrial on this specific basis. *See* Pa.R.Crim.P. 605(B) ("When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; **the motion shall be made when the event is disclosed.**" (emphasis added)); *see also*, *e.g.*, Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

The only motions for mistrial made by defense counsel during trial related to: (1) a witness commenting that a spectator was using a cell phone in the courtroom, *see* N.T. Trial, 5/9/13, at 212; (2) the prosecutor's comment that Mr. Aguilar could not speak for himself because he was deceased, *see* N.T. Trial, 5/10/13, at 61; (3) an outburst in the courtroom concerning Appellant's innocence made by a spectator, *see* N.T. Trial, 5/13/13, at 5; (4) the prosecutor's questioning whether Appellant wanted to prove his innocence, *id*. at 72, 108-09; and (5) the prosecutor's comments during his closing arguments concerning witness credibility, *id*. at 177-78.

Appellant failed to make a timely motion for a mistrial during or immediately after the many instances of testimony concerning alleged threats made against the Commonwealth's witnesses. As such, this claim has been waived. *See Commonwealth v. Cornelius*, 180 A.3d 1256, 1262 (Pa.Super. 2018) ("Appellant failed to make a timely request for a mistrial, and this claim,

accordingly, has been waived.") (quoting **Commonwealth v. McAndrews**, 430 A.2d 1165, 1167 (Pa. 1981)).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/20