J-S40010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAWN CORNELL DAVENPORT, JR. | : | |
| | : | |
| Appellant | : | No. 467 MDA 2025 |

Appeal from the Judgment of Sentence Entered December 16, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000769-2022

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED: FEBRUARY 3, 2026**

Shawn Cornell Davenport, Jr., appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, following his convictions of first-degree murder,[1] possession of a firearm prohibited,[2] firearms not to be carried without a license,[3] and recklessly endangering another person (REAP).[4] Davenport's counsel, Spencer H.C. Bradley, Esquire, has filed a motion to withdraw and an accompanying **Anders**[5] brief. After

---

[1] **See** 18 Pa.C.S.A. § 2502(a).

[2] **Id.** at § 6105(a).

[3] **Id.** at § 6106(a)(1).

[4] **Id.** at § 2705.

[5] **Anders v. California**, 386 U.S. 738 (1967). **See also Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

review, we affirm Davenport's judgment of sentence and grant Attorney
Bradley's motion to withdraw.

The trial court summarized the facts of this case as follows:

On January 16, 2022, Jeret Spears [] was working security at Bill's
Caf[e] at 2312 Derry Street in Harrisburg, Pennsylvania. The
victim, Xavier King, Jr., was in the process of paying [] Spears the
entrance fee when he was shot three times. [] Spears described
how he and [King] were standing very close to each other at the
time of the shooting. [] Spears attempted to keep other patrons
away from [King] until the police arrived. Following a review of
the surveillance footage, [] Spears identified the shooter as a
person that he knows by the nickname of "Stiz." He knew Stiz as
a regular patron of the cafe. [] Spears identified [Davenport] in
the courtroom as the patron he knew by the nickname of "Stiz."

Officer Derek Fenton [] was dispatched to Bill's Caf[e] for a report
of a shooting. Officer Fenton was the first officer to arrive at the
scene and observed [King] lying on the ground with a gunshot to
the head. Officer Fenton maintained scene security as the caf[e]
was still full of shocked and stressed patrons. Forensic
Investigator Duane Pyles arrived at the scene to photograph the
scene, collect evidence, and to generate a crime scene sketch.

Forensic Pathologist Wayne Ross[, M.D.] of the Dauphin County
Coroner's Office conducted the autopsy on January 18, 2022, for
[] King. D[octor] Ross observed two gunshot wounds to [King]'s
back and one gunshot wound to the back of [King]'s head and
neck area. The gunshot to the back of [King]'s head went through
[King]'s cervical spine, the spinal cord, and the brain stem.
D[octor] Ross determined that [Davenport] was standing behind
[King] when the shooting occurred. A distinctive ring of gunshot
residue around one of the gunshot wounds to [King]'s back shows
that the firearm was in physical contact with [King]'s sweatshirt
at the time he was shot in the back. The absence of gunshot
residue on [King]'s head [placed Davenport] at least three to four
feet behind [King] at the time [King] was shot in the back of the
head. According to D[octor] Ross, this tends to show that [King]
was in the process of falling or already on the ground when the
third gunshot entered the back of his head. D[octor] Ross
determined, with[in] a reasonable degree of scientific certainty,

that the manner of death is homicide caused by gunshot wounds to the body.

Parole Agent Karl Martin [] reviewed the surveillance footage from the caf[e] and positively identified [Davenport] as the shooter. Agent Martin also reviewed GPS data from [Davenport]'s GPS monitor and determined that the data showed [Davenport] travelling along the shooter's flight path away from the caf[e].

Trial Court Opinion, 6/24/25, at 2-3 (some formatting altered; citations omitted).

On January 18, 2022, Davenport was charged with the above-mentioned charges. Following a jury trial that took place on October 28-29, 2024, Davenport was found guilty of all charges. Sentencing was deferred due to Davenport's pending charges at another docket.[6] On December 16, 2024, Davenport was sentenced to concurrent sentences of life in prison for his conviction of first-degree murder, five to ten years' imprisonment for his conviction of possession of a firearm prohibited, two and a half to five years' imprisonment for his conviction of firearms not to be carried without a license, and two years' probation for his conviction of REAP.[7] *Id.* at 1.

On December 26, 2024, Davenport filed a post-sentence motion requesting a judgment of acquittal, alleging the evidence was insufficient to

---

[6] At the time Davenport was arrested for the charges underlying the instant appeal, he was found to be in possession of another firearm and charged with person not to possess a firearm under the separate docket number 1782 MDA 2022. *See* N.T. Sentencing Hearing, 12/16/24, at 2-3, 14-15.

[7] That same day, Davenport entered into a guilty plea on the persons not to possess charge at docket number 1782 MDA 2022. *See* N.T. Sentencing Hearing, 12/16/24, at 12-17. This sentence was imposed to run consecutively to the above-mentioned sentences.

support his conviction of first-degree murder, or, in the alternative, for an arrest of judgment and a new trial because the verdict was against the weight of the evidence. **See** Post-Sentence Motion, 12/26/24, at 1-5. The trial court denied Davenport's post-sentence motion on February 26, 2025.

Davenport filed a timely notice of appeal on March 21, 2025 and, on May 7, 2025, Davenport filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, raising one issue: "[The trial c]ourt erred in failing to merge the [REAP] conviction with the [m]urder in the [f]irst [d]egree conviction." Rule 1925(b) Statement, 5/7/25, at 1 (unpaginated). The trial court filed its Rule 1925(a) opinion on June 24, 2025.

On August 11, 2025, Attorney Bradley filed an **Anders** brief in this Court, and an accompanying application to withdraw. Davenport has not retained alternate counsel or filed a *pro se* response raising any additional issues.[8]

Prior to addressing the merits of Davenport's appeal, we must determine whether Attorney Bradley has complied with the dictates of **Anders** and its progeny in his request to withdraw from representation. **See** **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (this

---

[8] On September 2, 2025, Davenport filed an application for extension of time to file a reply to Attorney Bradley's **Anders** brief. This Court granted the extension and permitted Davenport to file a response on or before November 3, 2025. **See** Order, 9/8/25. On September 19, 2025, Davenport filed a motion to withdraw his request for an extension of time. This Court granted Davenport's motion to withdraw his September 2, 2025 application and vacated the order granting the extension. **See** Order, 10/24/25.

Court may not review merits of underlying issues without first examining counsel's request to withdraw).  Court-appointed counsel seeking to withdraw from representation on the basis that the appeal is frivolous must:

(1) petition the court for leave to withdraw[,] stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) file a brief referring to anything that arguably might support the appeal[;] and (3) furnish a copy of the brief to the defendant and advise the defendant of his [] right to retain new counsel or raise any additional points that he [] deems worthy of the court's attention.

*Id.*

Additionally, the Pennsylvania Supreme Court has explained that a proper *Anders* brief must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d 361.  Finally, this Court must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Here, our review of Attorney Bradley's *Anders* brief and application to withdraw reveals that he has complied with each of the technical requirements of *Anders* and *Santiago*.  Attorney Bradley states that he has made a conscientious examination of the record, determined that further pursuit of a

direct appeal would be frivolous, and furnished a copy of the letter sent to Davenport advising him of his right to proceed *pro se* or raise issues in response to the brief.  **See Goodwin**, **supra**.  Additionally, Attorney Bradley complied with the requirements of **Santiago**.  Accordingly, we conclude that Attorney Bradley has substantially complied with the requirements for withdrawing from representation and proceed with an independent review of the merits.  **See Flowers**, **supra**.

Attorney Bradley raises the following issue in his **Anders** brief:  "Should appellate counsel be permitted to withdraw as counsel because any appellate issues in the instant case are frivolous?"  **Anders** Brief, at 4 (full capitalization omitted).   Within the **Anders** brief, however, Attorney Bradley more specifically identifies the following three issues purportedly preserved for appellate review:  (1) the sufficiency of the evidence to prove homicide, murder in the first degree, instead of manslaughter as well as the other convictions; (2) the weight of the evidence for each conviction; and (3) the legality of sentencing.  **See Anders** Brief, at 10, 14, 19.[9]  Although Attorney Bradley advances no argument in the **Anders** brief with respect to these potential issues, we note that neither **Anders** nor **McClendon** requires counsel to set forth an argument; rather, **Anders** requires counsel to provide references to anything in the record that might arguably support the appeal. **Santiago**, 978 A.2d at 354.  Here, Attorney Bradley has done so.

_____

[9] The Commonwealth did not file an appellee's brief in this matter.

In his first claim on appeal, Attorney Bradley raises the issue of whether the evidence was sufficient to prove criminal homicide, instead of manslaughter.[10] *See Anders* Brief, at 14-16. Specifically, Davenport avers that the testimony and evidence presented failed to prove that he intended to kill King. *See* Post-Sentence Motion, 12/26/24, at 2-3; *Anders* Brief, at 8. Additionally, Attorney Bradley notes that trial counsel conceded that there was sufficient evidence for the other charges in the post-sentence motion, but, in the interest of thoroughness, he reviewed the sufficiency as to all charges. *See Anders* Brief, at 16-19. Having done so, Attorney Bradley concluded that any argument regarding the sufficiency of the evidence supporting the other charges would be frivolous. *See id.*

In reviewing a challenge to the sufficiency of the evidence, our standard of review is:

> [W]hether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict-winner, was sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. Additionally, when examining sufficiency issues, we bear in mind that: the Commonwealth's burden may be sustained by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence

_____

[10] Although this claim was not preserved in Davenport's Rule 1925(b) statement, as set forth above, we still review this claim as part of our independent review of the record. *See Flowers*, *supra*. *See also Commonwealth v. Cox*, 231 A.3d 1011, 1016 (Pa. Super. 2020) (when direct appeal counsel has filed *Anders* brief and is requesting permission to withdraw from representation, this Court may overlook certain procedural deficiencies in appellate court filings to ensure that *Anders* counsel has not overlooked non-frivolous issues).

received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

*Commonwealth v. Dewald*, 317 A.3d 1020, 1038 (Pa. Super. 2024) (internal citations, quotations, brackets, and indentation omitted).

Murder of the first degree is an intentional killing. *See* 18 Pa.C.S.A. § 2502(a). The Crimes Code defines "intentional killing" as a "willful, deliberate[,] and premeditated killing" of another person. *Id.* at § 2502(d). To sustain a conviction for first-degree murder, the Commonwealth must prove beyond a reasonable doubt that: "a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011). The Commonwealth may prove the specific intent to kill "solely through circumstantial evidence." *Commonwealth v. Blakeney*, 946 A.2d 645, 652 (Pa. 2008). Relevant in the present case is the precept that "[a] jury may infer the specific intent to kill based upon the defendant's use of a deadly weapon on a vital part of victim's body." *Id.* (internal citation omitted). The specific intent to kill can be formed in a "fraction of a second." *Commonwealth v. Clemons*, 200 A.3d 441, 462 (Pa. 2019).

Conversely, third-degree murder "occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a

- 8 -

felony, but contains the requisite malice." ***Commonwealth v. Thompson***, 106 A.3d 742, 759 (Pa. Super. 2014) (citation omitted); ***see also*** 18 Pa.C.S.A. § 2502(c). To sustain a third-degree murder conviction, the Commonwealth must demonstrate that the defendant caused the death of another individual with malice. ***See Commonwealth v. Knox***, 219 A.3d 186, 195 (Pa. Super. 2019) (citation omitted).

Davenport was also convicted of two firearm charges. A person commits the crime of person not to possess if they were previously convicted of an enumerated offense and possess a firearm. ***See*** 18 Pa.C.S.A. § 6105(a)(1). Similarly, a person commits the offense of firearms not to be carried without a license when he "carries a firearm in any vehicle or . . . carries a firearm concealed on or about his person except in his place of abode or fixed place of business, without a valid and lawfully issued license[.]" ***Id.*** at § 6106.

Finally, Davenport was convicted of REAP. A defendant commits REAP when he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." ***Id.*** at § 2705. The crime of REAP requires the creation of danger, so the Commonwealth must prove the existence of an actual present ability to inflict harm upon another. ***Commonwealth v. Reynolds***, 835 A.2d 720, 727-28 (Pa. Super. 2003). While the mere act of discharging a firearm does not on its own constitute REAP, discharging a firearm near another person is sufficient to support such a conviction. ***Commonwealth v. Hartzell***, 988 A.2d 141, 144 (Pa. Super. 2009).

Upon review of the record, we conclude that the Commonwealth presented sufficient evidence to support Davenport's convictions. At trial, the Commonwealth presented video evidence of the shooting in which King was shown speaking with Spears, the bouncer of Bill's Cafe, prior to entering the cafe. *See* N.T. Jury Trial, 10/28-29/24, at 25-31. Davenport is then depicted tapping King and firing a shot into King's back and firing again while King was falling. *Id.* Spears, who was in close proximity to King, identified Davenport as the man in the video who shot King and testified that Davenport shot King three times. *Id.* at 23, 32. Davenport himself also testified that he shot King three times. *Id.* at 165. Doctor Ross, the medical examiner, stated that King was shot in several vital areas of the body. *Id.* at 92-95 (Doctor Ross testifying victim had two fatal gunshot wounds in lower back and one in neck that damaged victim's cervical spine, spinal cord, and brain stem); *see also Blakeney*, *supra*. Davenport testified that, while he had past conflicts with King, he and King did not interact prior to the shooting. *See* N.T. Jury Trial, 10/28-29/24, at 164-65. In sum, the Commonwealth presented evidence that, unprompted, Davenport approached and shot King three times in vital areas of the body. *See Clemons*, *supra*. Therefore, the Commonwealth's evidence was clearly sufficient to establish the specific intent to kill necessary for a conviction of first-degree murder. *See Houser*, *supra*.

Likewise, the Commonwealth presented evidence sufficient to prove that Davenport possessed a firearm during the commission of the crime and that he had a prior conviction that prohibited him from having a firearm. *See* N.T.

- 10 -

Jury Trial, 10/28-29/24, at 166 (Davenport testifying he had firearm on night of shooting); *id.* at 205 (parties stipulating Davenport had prior conviction of possession with intent to deliver). *See also* 18 Pa.C.S.A. § 6105(b) (enumerated offenses). Additionally, Davenport did not have a valid permit to carry a concealed firearm but concealed the firearm until he shot King. *See* N.T. Jury Trial, 10/28-29/24, at 150 (parties stipulating Davenport did not have valid concealed carry permit at time of shooting). Thus, both firearm charges were supported by sufficient evidence.

As to REAP, the Commonwealth's evidence and Davenport's own testimony demonstrated that Davenport fired a gun three times while in close proximity to both King and Spears. *Id.* at 30, 165. One of the bullets went through King's back, exited his abdomen, and reentered through his right wrist. *Id.* at 94. Spears testified that if King's wrist hadn't been in the way, the bullet would have hit him. *Id.* at 31. Thus, Davenport's actions recklessly endangered Spears because it was possible that the shot could have missed King's wrist and struck Spears instead. *See Hartzell*, *supra*. Therefore, we find the evidence sufficient to support the REAP conviction. Accordingly, the Commonwealth established each of the elements required for all of Davenport's convictions with sufficient evidence, and we agree with Attorney Bradley that Davenport's sufficiency claims are frivolous. *See Dewald*, *supra*.

Next, Attorney Bradley contends that the jury's verdict of first-degree murder was against the weight of the evidence. *See Anders* Brief, at 19-20.

- 11 -

However, upon review of the record, we conclude Davenport has waived this claim for failing to include it in his court-ordered Pa.R.A.P. 1925(b) concise statement. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [Rule 1925(b) s]tatement and/or not raised in accordance with the provisions of [Pa.R.A.P. 1925](b)(4) are waived.").

While Davenport preserved a challenge to the weight of the evidence in his post-sentence motion, he included no reference to that claim in his Rule 1925(b) statement. **See** Post-Sentence Motion, 12/26/24, at 3-5; **see also** Rule 1925(b) Statement, 5/7/25, at 1 (unpaginated). Therefore, the trial court was not provided with an opportunity to address the issue in its Rule 1925(a) opinion. This Court's standard of review restricts us to a review of the trial court's exercise of discretion in determining whether the verdict was against the weight of the evidence; we may not independently weigh the evidence to reach our own conclusion as to the underlying weight claim. **See Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013) ("an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination") (citations omitted). **See Commonwealth v. Mitchell**, 311 A.3d 567, *14-15 (Pa. Super. 2023) (Table)[11] (finding waiver of weight claim raised in **Anders** brief for failure to

---

[11] **See** Pa.R.A.P. 126(a)-(b) (unpublished, non-precedential memorandums of this Court, filed after May 1, 2019, may be cited for persuasive value).

include claim in Rule 1925(b) statement). Accordingly, Davenport's weight claim is waived.[12]

The final issue raised in Attorney Bradley's **Anders** brief involves the legality of Davenport's sentence. **See Anders** Brief, at 22-23. Attorney Bradley initially believed that Davenport's sentence was illegal as to the REAP and first-degree murder convictions, alleging the two should be merged for sentencing, but, ultimately, determined this challenge to be frivolous. **Id.** at 21-22. This issue implicates the legality of Davenport's sentence. **See Commonwealth v. Quintua**, 56 A.3d 399, 400 (Pa. Super. 2012). Issues relating to the legality of a sentence are questions of law, therefore, our standard of review is *de novo* and our scope of review is plenary. **Id.**

Crimes merge for sentencing if two requirements are satisfied: first, "the crimes arise from a single criminal act," and second, "all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A. § 9765. Analysis of the second requirement "begins and ends with the statutory elements of each offense." **Commonwealth v. Edwards**, 256 A.3d 1130, 1137 (Pa. 2021). "The elements required to be proved [for REAP] are all necessary, though not sufficient, to establish the elements of murder." **Commonwealth v. Musselman**, 396 A.2d 625, 625

_____

[12] Typically, if counsel seeks to withdraw under **Anders** in a criminal case, "counsel shall file of record and serve on the judge a statement of intent to withdraw in lieu of filing a [s]tatement." Pa.R.A.P. 1925(c)(4). Under such circumstances, we would not find waiver. However, here, Attorney Bradley chose to file a proper Rule 1925(b) statement even though he later sought to withdraw.

n.1 (Pa. 1979). However, the crimes do not merge if the victims are different. *See Commonwealth v. Hernandez*, 230 A.3d 480, 488 (Pa. Super. 2020) (defendant not charged with recklessly endangering murder victim, but for "the danger in which [defendant] placed other individuals near the scene of the shooting[";] therefore, merger not appropriate when third-degree murder and REAP convictions involve separate victims).

As in *Hernandez*, Davenport's convictions of first-degree murder and REAP each involve different victims. Davenport was convicted of first-degree murder for King and recklessly endangering Spears and other patrons at the cafe. The criminal complaint in this case states that Davenport was charged for REAP because Davenport "recklessly fired a firearm inside Bill's Caf[e] putting other patrons at risk for serious bodily injury." Criminal Complaint, 1/18/22, at 4. Likewise, the criminal information states that Davenport "recklessly engaged in conduct which placed or may have placed [] Spears in danger of death or serious bodily injury." Criminal Information, 4/14/22, at Count 4. At trial, the Commonwealth presented evidence to prove that Spears was also placed in danger of bodily harm by Davenport's actions. *See* N.T. Jury Trial, 10/28-29/24, at 30-31. Furthermore, the jury was instructed on REAP as it pertained to Davenport's actions towards Spears. *Id.* at 198 (trial court stating, "to find [Davenport] guilty of [REAP,] you must find that [Davenport] recklessly did something that placed or may have spaced others, **specifically [] Spears and other bar patrons,** in danger of death or serious bodily injury.") (emphasis added). Therefore, it is clear from the record that

- 14 -

the crimes of REAP and first-degree murder involved different victims and, thus, the crimes do not merge for purposes of sentencing.  ***See Hernandez***, ***supra***.

In light of the foregoing, we agree with Attorney Bradley's assessment that the issues raised here are frivolous.  Moreover, after conducting a full examination of all the proceedings, as required pursuant to ***Anders***, we discern no non-frivolous issues to be raised on appeal.  ***See Flowers***, ***supra***. Accordingly, we grant Attorney Bradley's petition to withdraw and affirm the judgment of sentence.

Judgment of sentence affirmed.  Application to withdraw granted. Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/03/2026

- 15 -