J-S37013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH ALLEN | : | |
| | : | |
| Appellant | : | No. 841 EDA 2024 |

Appeal from the PCRA Order Entered February 16, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002549-2020

BEFORE:  BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 31, 2024**

Joseph Allen appeals from the order that dismissed without a hearing his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

As the trial court explained on his direct appeal, on July 25, 2020, in Jakes' Bar in West Chester, Appellant assaulted a woman he had just met ("Victim") who had agreed to play shuffleboard with him, "touching . . . her breasts and rear end as well as twice reaching under her skirt and, first, touching the outside of her underwear and, second, touching on the inside of her underwear while attempting to penetrate her vagina." Trial Court Opinion, 12/13/21, at 2.  Their interactions were captured by the bar's surveillance cameras.

Appellant was charged with aggravated indecent assault, attempted aggravated indecent assault, and indecent assault, and he elected to proceed to a jury trial. As we explained on Appellant's direct appeal:

At trial, Victim testified concerning the assault and the video of the encounter between Victim and Appellant was admitted in evidence and played to the jury. Victim testified that after she and Appellant had played two rounds of shuffleboard without incident and they began playing again after a break, Appellant put his hand on her rear end and when she bent over to shoot the shuffleboard quoit, she felt Appellant put his hand up under her skirt and rub her vagina over her underwear. Victim testified that Appellant later pulled her to him and put his hands on her breasts and that she told him to stop and pushed his hands off her breasts. Victim testified that after she removed Appellant's hands when she bent over again to take her turn, Appellant put his hand up her skirt, moved her underwear aside and attempted to put his fingers in her vagina. Victim testified that she then walked to the bathroom to compose herself and that when she came back out, she told Appellant that what he did was inappropriate and went back to her seat at the bar. Victim testified that Appellant later came over to her while she was seated at the bar, that she again told him that what he did was not okay, and that Appellant in response said "apologies" and walked away. Victim testified that she did not walk away when Appellant first touched her under her skirt because she was scared and froze.

The video showed Appellant repeatedly putting his hand on Victim's rear end and reaching under her skirt four times when Appellant and Victim stood next to each other playing shuffleboard at the same end of the shuffleboard table. The video showed that during this portion of the shuffleboard game, Victim generally stood at a distance from Appellant except when she was shooting the shuffleboard quoit and that Appellant put his hand on Victim's rear end and under her skirt when she was near him to take her turn. The video later showed Appellant putting his arms around Victim, Victim moving his arms off her breasts, and Appellant again reaching under Victim's skirt for the fourth time after she moved his arms off her breasts, at which point Victim pulled her skirt away from him, turned toward him, and walked away from the shuffleboard table toward the restroom.

- 2 -

*Commonwealth v. Allen*, 284 A.3d 958, 2022 WL 3909021, at *2 (Pa.Super. 2022) (non-precedential decision) (cleaned up), *appeal denied*, 293 A.3d 562 (Pa. 2023).

Based upon this and other evidence, the jury acquitted Appellant of aggravated indecent assault, but found him guilty of the remaining offenses. The trial court sentenced him to ten to twenty-three months of incarceration, followed by one year of probation, and informed of his lifetime obligation to register as a sexual offender. His direct appeal merited no relief. ***Id***.

Appellant filed a timely, counseled PCRA petition on September 7, 2023, challenging the legality of his sentence and the effectiveness of his trial counsel. After the Commonwealth responded to the petition, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing. Unpersuaded by Appellant's response, the court dismissed the petition by order of February 16, 2024.

This timely appeal followed. Both Appellant and the PCRA court fulfilled their respective Pa.R.A.P. 1925 obligations. Appellant elected to limit our review to the following issue:

> Whether the PCRA court erred in determining it was not ineffective assistance of counsel to fail to object to that the comments of the prosecutor in closing, when the comments undermined the truth-determining process, and that that no reliable adjudication of guilt or innocence could have taken place based on the failure to object to the improper bolstering that occurred during closing arguments.

Appellant's brief at 8.

We begin with the applicable law. "[W]e review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." **Commonwealth v. Howard**, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up). Ultimately, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." **Commonwealth v. Stansbury**, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

This Court has summarized the law governing Appellant's challenge to counsel's performance thusly:

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

**Commonwealth v. Sandusky**, 203 A.3d 1033, 1043 (Pa.Super. 2019) (cleaned up). No relief is due if the defendant fails to sustain any prong of the test. **See**, **e.g.**, **Commonwealth v. Rivera**, 199 A.3d 365, 374 (Pa. 2018).

- 4 -

Appellant contends that trial counsel was ineffective for failing to object to prosecutorial misconduct during closing arguments, which he argues improperly bolstered Victim's testimony. An assertion that prosecutorial misconduct warrants a new trial "is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error." *Commonwealth v. Hernandez*, 230 A.3d 480, 490 (Pa.Super. 2020) (cleaned up). Our Supreme Court summarized the principles pertinent to Appellant's claim as follows:

> It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.
>
> . . . .
>
> In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

*Commonwealth v. Santiago-Burgos*, 314 A.3d 535, 547–48 (Pa.Super. 2024) (cleaned up). The prosecution's comments about the credibility of its witness crosses the line from fair response to improper bolstering where "the following two factors are met: (1) the prosecutor must assure the jury the

testimony of the government witness is credible, and (2) this assurance must be based on either the prosecutor's personal knowledge or other information not contained in the record." ***Commonwealth v. Reid***, 259 A.3d 395, 429 (Pa. 2021) (cleaned up). Finally, we observe that "[a] trial court may remove taint through curative instructions." ***Commonwealth v. Caldwell***, 117 A.3d 763, 774 (Pa.Super. 2015) (*en banc*).

Mindful of this legal landscape, we turn to the specific remarks about which Appellant complains. He lists them in his brief as follows:

- "[Victim's] testimony was clear, it was credible, and I submit to you highly believable and consistent and honest."

- "[Victim] withstood a lot, and she did, I'd argue, she did really well, and I hope that you find she testified credibly and clearly."

- "How the heck is she supposed to keep straight every single thing that she told every single person with exact words?"

- "We need to consider her interest in this case."

- "This is not a civil case . . . . She's not going to be paid for this . . . what is her ax to grind . . . . There was nothing that happened that was significant besides the crime. What's her interest in the case? Think about all she needed to do."

- "She spent hours of course, telling all of her closest people what happened. Then she spent the remainder of the time debating, am I going to go through with this? . . . She endured that time period . . . that didn't deter her . . . . She had to tell Officer Keen what happened. "

- "She endured a lot. What is her interest in the case? Why would she do all of that unless she was telling the truth? Why would she endure all of that, because she['s] exaggerating and she has this reaction where she's making

- 6 -

> it up? She's going to endure all of that; the time and the prep to come to court; the amount of time, number of times she had to watch the video? I submit to you that was not fun for [Victim]."
>
> • "Further, why would she do all of this unless she was telling the truth?"
>
> • "[Victim]'s sister testified very credibly."

Appellant's brief at 16-17 (cleaned up).

Appellant argues that trial counsel should have objected to what he characterizes as improper vouching for Victim's credibility. He maintains that the comments amount to a personal assurance that she was credible.[1] *Id*. at 19-20. He further contends that the defense closing did not open the door to such bolstering because it lacked *ad hominem* attacks on Victim or "theatrical use of words." *Id*. at 22.

The PCRA court rejected Appellant's claim for want of arguable merit. The court concluded that the comments "did not amount to an assurance of credibility based on extra-record facts." Rule 907 Notice, 12/1/23, at 3 n.1. Further, citing **Commonwealth v. Sanchez**, 82 A.3d 943 (Pa. 2013), the court reasoned that the comments were a fair response to the defense's

---

[1] In support of his argument Appellant relies upon a 2013 unpublished memorandum of this Court, asserting that such is proper pursuant to Pa.R.A.P. 126. That Rule authorizes citation to non-precedential decisions filed after May 1, 2019, for persuasive value. **See** Pa.R.A.P. 126(b). Unpublished memorandum decisions filed before that date may not be cited except in limited circumstances not applicable here. **See** 210 Pa. Code § 65.37(B). Therefore, we have not considered the improperly-cited unpublished memorandum in deciding this appeal.

"direct attacks on the victim, her credibility and her motives" and properly "highlight[ed] those standards by which any juror is directed to consider the testimony and credibility of any trial witness—demeanor, interest, consistency, *etc*." *Id*. at 4 n.1.

We discern no error on the part of the trial court. First, contrary to Appellant's characterization, the above-quoted statements of the prosecutor did not suggest an assurance of Victim's credibility based upon personal knowledge or extrinsic evidence. Rather, the Commonwealth asked the jury to use common sense in analyzing the evidence and conclude that Victim's testimony was worthy of belief.

Additionally, the comments were made in response to those offered in the defense closing, which began as follows:

> Victim is a term that's used frequently in these circles. And, quite frankly, nowadays it's a term that's used sometimes too often. Don't get me wrong, there are hundreds upon hundreds of legitimate victims who walk through these doors to the courthouse and walk these hallways every single year; people who are legitimately victimized by crimes. But there's another class of individuals as well; people who victimize themselves; that something happens to them and they create, in their mind, that they are victims. And those individuals create another class of victims, the people that they falsely accuse. Those people are then forced to spend endless amounts of time and stress and worry and put their lives on hold, and, quite frankly, money, while they're defending themselves against baseless allegations. That's what we have here today.

N.T. Trial, 6/16/21, at 159-60 (emphases added). Defense counsel further stated that Victim relayed things "that didn't occur," creating a "story" that

- 8 -

she wanted the jury to "buy into," changing it as necessary to line up with the other evidence. *Id*. at 164-65. He continued:

> And in assessing her credibility, ladies and gentlemen, you look at things that she testified to now, and then you also compare some of those to what she testified to previously. How many times did we have to go through these paper transcripts and say, I know what you're saying now, but this is what you said before, isn't it? I know what you're telling us now, but this is what you said to Detective Sergeant Collins. And that's because this becomes a creation in her mind, that from the time that [Appellant] came up to her and apologized, from that point forward she has victimized herself and she has become, the best way to say it, is an advocate for the prosecution of [Appellant]. In other words, it has been her intent from that point forward to make sure that, as she called it in her testimony, that she gets justice. And you assess those things when you're talking about credibility, and credibility and the success or failure of the Commonwealth's case.
>
> Do you remember what she had described to Detective Sergeant Collins about the whole touching of the breasts and what her actions were? She testified previously -- actually, no, she told Detective Sergeant Collins about [thirty-six] hours after this happened that, when he touched my breasts, I tried to break free from him. I tried to break free. I pushed him away. I told him no, stop, you're getting too handsy. You saw that exact interaction. Did that occur? Or was that her trying to get Detective Sergeant Collins to believe that she was a victim here?

*Id*. at 177-78. The defense concluded: "there wasn't any crime that happened in that bar that day, that night, and just because one person says there is, doesn't mean it's true." *Id*. at 184.

Thus, the plainly-stated defense position was that Victim imagined a crime that did not occur and offered false testimony to convince the jury that one actually had. In other words, her testimony was not worthy of credence. The prosecution's response quoted above was a like-kind response.

Moreover, the trial court in charging the jury informed them that they collectively were "the sole judges of credibility" overall, and, specifically, "the sole judge of the credibility of each of the witnesses and their testimony." *Id*. at 225. We presume the jury followed those instructions rather than allowing the prosecution to dictate their acceptance of Victim's credibility. *See*, *e.g.*, *Commonwealth v. Rivera*, 316 A.3d 1026, 1040 (Pa.Super. 2024) ("It is well settled that the jury is presumed to follow the trial court's instructions." (cleaned up)).

Therefore, we hold that the PCRA court did not err in ruling that Appellant's challenge to trial counsel's failure to object to the prosecution's comments about Victim's credibility lacked arguable merit. *Accord Reid*, 259 A.3d at 430 (holding there was no arguable merit to claim that Commonwealth improperly bolstered its witnesses because: (1) while the prosecutor stated that the witnesses told the truth, there was no indication that this was based upon personal knowledge or non-record sources; (2) the defense opened the door to a response by attacking the credibility of the witnesses; and (3) the jury was presumed to follow the court's instruction that it was the sole judge of credibility). Consequently, we have no cause to disturb the PCRA court's order dismissing his petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/31/2024